# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EXXONMOBIL OIL CORPORATION AND
EXXON MOBIL CORPORATION,**
*Plaintiffs,*

v.

**MARS OIL PIPELINE COMPANY LLC;
CHEVRON U.S.A., INC.; TOTALENERGIES
E&P USA, INC.; LOOP LLC; AMBERJACK
PIPELINE COMPANY; SHELL PIPELINE
COMPANY LP; LOCAP LLC;
TRANSOCEAN LTD.; SLB ONESUBSEA;
AND JOHN WOOD GROUP PLC,**
*Defendants.*

**CIVIL ACTION NO. 2:25-cv-02001**

**JUDGE: NANNETTE JOLIVETTE
BROWN**

**MAGISTRATE JUDGE: DONNA
PHILLIPS CURRAULT**

## MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS

Defendants, Shell Pipeline Company, LP ("SPLC"), Mars Oil Pipeline Company LLC ("Mars"), and Amberjack Pipeline Company ("Amberjack") (sometimes collectively the "Movants"), file this Memorandum in Support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

This suit arises out of Plaintiffs', ExxonMobil Oil Corporation ("EMOC") and Exxon Mobil Corporation ("EMC") (sometimes collectively referred to hereinafter as "Plaintiffs"), allegations that they purchased contaminated crude oil from Chevron U.S.A., Inc. ("Chevron U.S.A.") produced offshore. This allegedly contaminated crude oil was then carried by pipelines, owned by Movants, to EMC's refinery. Plaintiffs allege that they suffered economic losses, lost profits and lost productivity due to the contaminated crude oil. However, Plaintiffs fail to cite any authority or basis whatsoever to support the proposition that the Movants had an affirmative duty to inspect or analyze the petroleum product produced at Chevron U.S.A.'s well and sold by

Chevron U.S.A. to EMOC. Plaintiffs merely plead that the Movants had the right to decline to transport the petroleum produced by Chevron U.S.A. to EMC's refinery. Accordingly, Plaintiffs have failed to state a claim against Movants for which relief may be granted and the claims against Movants must be dismissed with prejudice.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### a.  Procedural History

On September 25, 2025, Plaintiffs filed this lawsuit against SPLC, Mars, Amberjack, Chevron U.S.A., TotalEnergies E&P USA, Inc. ("TotalEnergies"), LOOP, LLC ("LOOP"), LOCAP LLC ("LOCAP"), Transocean LTD ("Transocean"), SLB OneSubsea ("SLB OneSubsea"), and John Wood Group PLC ("Wood") (sometimes referred to collectively as "Defendants") asserting breach of warranty against redhibitory defects, claims under the Louisiana Products Liability Act, negligence, and breach of contract all arising from alleged damage and contamination of crude oil that was purchased and transported by EMOC and received and processed at EMC's Refinery.[1] Plaintiffs stipulated to extend the deadline for all defendants to respond to the Complaint until December 23, 2025.[2] These stipulations were all granted by the Court.[3]

### b.  Factual Background

EMOC is a manufacturer of petroleum products. EMOC purchases crude oil from offshore production companies. The crude oil is transported from pipeline systems to onshore storage and refining facilities. One of the refineries that EMOC contracts with is EMC. EMC refines the crude oil produced by EMOC into petroleum products.

---

[1] R. Doc. 1.
[2] R. Docs. 14, 18, 19, 21, and 24.
[3] R. Docs. 16, 20, 22, 23, and 25.

Mars, SPLC, Amberjack, LOOP, and LOCAP all own and/ or operate pipeline systems that often transport crude oil to EMOC.

The Anchor Project is located 140 miles from the Louisiana coast on the U.S. Outer Continental Shelf and is a seven well-subsea development and semi-submersible production unit of crude oil. At all material times, the Anchor Project had a design capacity of 75,000 barrels of crude oil per day. Crude oil production began on August 12, 2024.

Plaintiffs allege that Chevron U.S.A. has a 62.86% controlling working interest in the Anchor Project and TotalEnergies has the remaining 37.14% working interest. Plaintiffs further allege that the Anchor Project "is the genesis of the low pH and contaminated crude oil."[4] Similarly, Transocean constructed and operated the drilling rig which was used to develop the Anchor Project, while SLB OneSubsea developed "certain key subsea components"[5] of the Anchor Project. Wood allegedly provided design for the Anchor Project, including the production of flowlines, export pipelines, and flow assurance analysis.

Production wells are tied to the Anchor platform which is then connected to a network of pipelines used to carry crude oil. Some of these pipelines are owned and/or operated by Movants. The pipeline systems provide service to different parishes within Louisiana.

As alleged in the Complaint, tariffs govern how SPLC, Mars, and Amberjack transport petroleum. Plaintiffs allege that at the time of the incident, Mars transported petroleum in accordance with LSPC No. 11.4.0 and Amberjack transported oil under the Non Jurisdictional Tariff 13.12.0. Assuming these specific tariffs did apply, Plaintiffs allege that the tariffs contain identical language in regards to the rights of these carriers.[6]

---

[4] R. Doc. 1 at ¶ 7.
[5] R. Doc. 1 at ¶ 14.
[6] R. Doc. 1 at ¶ 116.

This suit arises out of Plaintiffs' allegations that they purchased crude oil from Chevron U.S.A., through the Mars production stream for processing, and the crude oil was out of specification due to "its low pH and its contamination with zinc."[7]  This "contaminated" crude oil was then allegedly mixed with other oil owned by EMOC, contaminating that oil as well.

EMC's refinery allegedly experienced issues and degraded performance because the contaminated oil entered its system. Subsequently, EMC allegedly tested the contaminated oil for other issues and identified that the oil contained elevated levels of zinc. Plaintiffs claim that they suffered economic losses, lost profits and lost productivity.

EMOC sent a letter to SPLC requesting information about the contaminated oil and SPLC responded explaining that per the tariffs which control the transportation of petroleum, carriers such as SPLC, are "not responsible for monitoring receipts or deliveries for contaminants."[8] The same is true for other carriers like Mars and Amberjack.

### c.  Summary of Relevant Allegations against Shell, Mars, and Amberjack

Plaintiffs allege that Mars, Amberjack, and Shell all breached their duty of care owed to EMOC and EMC for carrying the alleged contaminated crude oil through their pipelines. Plaintiffs apparently intend to twist the language contained in both the Mars and Amberjack tariffs to try and persuade the Court that there was a duty owed to Plaintiffs and that SPLC, Mars and Amberjack breached that duty. Plaintiffs argue that SPLC, Mars, and Amberjack had the right to reject contaminated oil and that because they did not, SPLC, Mars, and Amberjack breached their duty owed to Plaintiffs.

Plaintiffs do not allege that Movants sold the subject petroleum, only that they carried it through their pipelines. Plaintiffs allege that the aforementioned rights to reject contaminated oil

---

[7] R. Doc. 1 at ¶ 30.
[8] R. Doc. 1 at ¶ 41.

are actually "required specifications" which "protect and create a duty in favor of EMOC [and] EMC".[9] Plaintiffs also sponsor the idea that SPLC, Mars, and Amberjack actually owed a duty to "exercise reasonable care and exercise their right to reject these low pH and contaminated shipments of crude oil, as these shipments did not meet the required specifications of the applicable tariffs."[10] But, there is nothing to support these claims and neither the tariffs nor any contract on which Plaintiffs can rely contain language that Movants owe a duty to police what is sold and transported from the well to the refineries.

Plaintiffs allege that SPLC, purely as an operator of the pipeline, had a duty to "ensure that reasonable care was exercised and that the low pH and contaminated shipments of crude oil were rejected by the Mars Pipeline and the LOOP Pipeline."[11] Plaintiffs claim that these alleged duties were breached when SPLC, Mars, and Amberjack failed to reject the crude oil, and thus, the failure to reject the oil was the "cause-in-fact and legal cause of the damages suffered" by Plaintiffs.[12] Notably, however, SPLC is not the operator of the LOOP Pipeline.

Whether by contract, regulation, or practice, neither SPLC, Mars nor Amberjack owed a duty to Plaintiffs to chemically analyze and reject the crude oil that it transported. Plaintiffs fail to plead any authority or basis whatsoever to support the proposition that the Movants had an affirmative duty to inspect or analyze the petroleum product purchased by Plaintiffs and shipped from Chevron U.S.A.'s Anchor wells. Plaintiffs fail to articulate how a duty exists for the pipelines to be responsible for the quality of the petroleum when the pipelines simply carry the crude oil to the refinery. Accordingly, the negligence claims against SPLC, Mars, and Amberjack fail to state a claim and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[9] R. Doc. 1 at ¶ 119.
[10] R. Doc. 1 at ¶ 122.
[11] R. Doc. 1 at ¶ 123.
[12] R. Doc. 1 at ¶ 124.

## II.    LEGAL STANDARDS

### a.  RULE 12(B)(6)

The standard of review for a motion to dismiss under Rule 12(b)(6) is well-settled:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544 (2007) (internal citations omitted)).

Plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court does not need to accept as true "a legal conclusion couched as a factual allegation," and "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citation modified). Moreover, the Court "cannot assume facts not alleged." *Robertson v. Plano City of Texas*, 70 F.3d 21, 23 (5th Cir. 1995). Further, the Court need not entertain "unwarranted deductions of fact." *See Patton v. Fujitsu Tech. Sols., Inc.,* 2002 WL 31498996, at *2 (N.D. Tex. Nov. 7, 2002). Nor must the Court "strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008).

Plaintiffs have failed to provide more than mere conclusions that SPLC, Mars, and Amberjack "breached" a duty that does not exist under law. Therefore, their claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice.

### b.  Negligence Standard

There are five elements of a negligence claim under Louisiana law: duty, breach, factual causation, legal causation, and damages. *Jack v. Evonik Corp.*, 79 F.4th 547, 556 (5th Cir.

2023); La. Civ. Code Ann. art. 2315. The duty-risk analysis "is the standard negligence analysis employed in determining whether to impose liability." *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006)). To determine whether a defendant owes a plaintiff a duty, Louisiana courts "examine 'whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.'" *Audler*, 519 F.3d at 249 (quoting *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La. 1993)); *see also Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 445 (5th Cir. 2021) (citing *Lemann*, 923 So. 2d at 633).

To plead a duty, a Louisiana negligence plaintiff must cite a specific standard of care by pointing to "any law (statutory, jurisprudential, or arising from general principles of fault)." *Lemann*, 923 So. 2d at 633. The Fifth Circuit has recognized that Louisiana law may look to federal statutory and regulatory schemes in delineating the scope of a duty under the duty-risk analysis. *See Bd. of Comm'rs of Se. La. Flood Prot. Auth. – East v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 727 (5th Cir. 2017) (applying Louisiana law and noting "this court has often held that violation of a [f]ederal law or regulation can be evidence of negligence" (citation and internal quotation marks omitted) (alteration in original)).

## III.    ARGUMENT AND AUTHORITIES

No duty exists for SPLC, Mars and Amberjack to inspect and/or analyze the petroleum product purchased by Plaintiffs or to stop the transportation of the product. The sole theory of fault alleged against Movants lies in negligence. Because no duty exists, Plaintiffs have failed to state a claim for negligence against SPLC, Mars, and Amberjack. Therefore, the claims against SPLC,

Mars, and Amberjack should be dismissed, with prejudice, under Federal Rule of Civil Procedure 12(b)(6).

Whether SPLC, Mars, and Amberjack owed a duty to Plaintiffs is a question of law for the court to decide. *See Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94) 646 So.2d 318, 322; *see also Haydin v. Crescent Guardian, Inc.*, 2001-1986 (La. App. 4 Cir. 5/15/02) 818 So.2d 1033, 1040. Simply put, the inquiry is whether the plaintiff has any law, be it – statutory, jurisprudential or arising from general principles of fault – to support its claim. *Faucheaux v. Terrebonne Consolidated Government,* 615 So.2d 289, 292 (La.1993).

Plaintiffs allege that "the tariffs governing movements [. . .] all provide for required specifications for the crude oil transported in these pipelines."[13] However, that is not the case. The full language of Section 25, of both Mars' and Amberjack's (both Carriers) tariffs, is as follows:

> Carrier **reserves the right to reject**:
>
> [. . . ]
>
> B. Petroleum containing water, sediment and other impurities totaling in excess of one percent (1%) as determined by industry accepted tests, or by such other tests as may be agreed upon by the Shipper and Carrier.
>
> […]
>
> D. Petroleum that has been contaminated by the existence of and/or excess amounts of impure substances, including but not limited to chlorinated and/or oxygenated hydrocarbons such as methanol, or arsenic, lead, and/or other metals which cause harm to other Shippers, connecting carriers, uses of the contaminated Petroleum or Carrier.[14]

---

[13] Rec. Doc. 1 at ¶ 115.

[14] *See* Exhibit 1 Non Jurisdictional Tariff 13.12.0 at p. 4. Movants are mindful that "[i]f, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, where, as here, the exhibits to the Rule 12 motion "are 'referred to in the complaint and are central to the plaintiff's claim,' the court may also consider them without converting the motion into one for summary judgment." *Rafuse v. Advanced Concepts & Technologies Int'l, L.L.C.*, No. 22-51126, 2024 WL 4284932, 2024 U.S. App. LEXIS 24374 (5th Cir. Sept. 25, 2024) (quoting *Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)).

Section 25 of the tariffs further states that the "Carrier is not responsible for monitoring receipts or deliveries for contaminants."[15] Finally, the tariffs do contain language regarding the sole duty of a carrier. The provision states:

> **45. Duty of a Carrier.**
> Carrier shall transport Petroleum with reasonable diligence, considering the quality of the Petroleum, the distance of transportation, the safety of operation, and other material elements. Carrier cannot commit to delivering Petroleum to a particular destination at a particular time.[16]

SPC, Mars, and Amberjack do not have a duty to reject crude oil that is contaminated, they simply "reserve the right to reject" should they become aware that the oil is contaminated. Plaintiffs state as fact that this reservation of a right amounts to affirmatively providing "required specifications" that the crude oil **must** meet. However, that is not the case. Plaintiffs have failed to cite any language or basis in fact or law which supports their factual allegations. The tariffs do not include "required specifications" for the crude oil. Plaintiffs conveniently ignore the remaining paragraphs in Section 25 of the tariffs which actually state that the carriers are **not responsible** for monitoring the crude oil for contaminants. Plaintiffs also ignore Section 45 of the tariffs which states the sole duty of a carrier, as listed above. Furthermore, Plaintiffs have failed to plead, with specificity, anything to suggest as much. SPLC, Mars and Amberjack may have had the right to reject crude oil that did not meet "required specifications," but no duty existed.

Furthermore, Plaintiffs have failed to plead to any law, whether by contract, regulation, or practice, that stands for the proposition that either SPLC, Mars and/or Amberjack owed a duty to Plaintiffs to chemically analyze or test and reject the crude oil that was produced, sold, and shipped by Chevron U.S.A. and then received and processed by EMC at its refinery. Plaintiffs fail to

---

[15] *Id.*
[16] Exhibit 1 at p. 5.

articulate in their Complaint how a duty exists on the part of the pipelines to determine and take responsibility for the quality of the petroleum they carry.

Plaintiffs have failed to plead any law, regulation, contract, or general principal which stands for their factual allegations that by reserving the right to refuse to carry crude oil, Movants have breached a duty Plaintiffs claim they are owed. Because SPLC, Mars and Amberjack did not owe such a duty to Plaintiffs, and Plaintiffs have not articulated one, Plaintiffs' claims for negligence against SPLC, Mars, and Amberjack should be dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV.    CONCLUSION

For the reasons outlined above, Movants, Shell Pipeline Company, LP, Mars Oil Pipeline Company, LLC and Amberjack Pipeline Company, respectfully request that this Honorable Court dismiss the claims against them, pursuant to Fed. R. Civ. Pro. 12(b)(6).

Respectfully submitted:

**PHELPS DUNBAR LLP**

By:   */s/ Miles P. Clements*
Miles P. Clements, T.A. (#4184)
Joseph E. Lee III (#26968)
Ashley B. Palermo (#40708)
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone:    (504) 566-1311
Facsimile:     (504) 568-9130
E-Mail:        miles.clements@phelps.com
               josh.lee@phelps.com
               ashley.palermo@phelps.com

**ATTORNEYS FOR SHELL PIPELINE COMPANY, LP, MARS OIL PIPELINE COMPANY LLC, AND AMBERJACK PIPELINE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have on this 23rd day of December, 2025, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by facsimile and/or mailing same or by United States mail, properly addressed and first class postage paid.

_/s/ Miles P. Clements_

Miles P. Clements
