**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EXXONMOBIL OIL CORPORATION AND EXXON MOBIL CORPORATION** | **CASE NO. 25-CV-2001** |
| **v.** | **JUDGE NANNETTE JOLIVETTE BROWN** |
| **MARS OIL PIPELINE COMPANY, LLC; ET AL.** | **MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

**MEMORANDUM IN SUPPORT OF WOOD GROUP USA, INC.'S MOTION TO DISMISS**

Defendant Wood Group USA, Inc. ("Wood Group") respectfully submits the following memorandum in support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). The negligence claim against Wood Group asserted in ExxonMobil Oil Corporation and Exxon Mobil Corporation's First Amended Complaint (ECF No. 65) should be dismissed for the following reasons.

**BACKGROUND**

Plaintiffs ExxonMobil Oil Corporation ("EMOC") and Exxon Mobil Corporation ("EMC") allege in their Amended Complaint that they were damaged by "low pH and contaminated crude oil" that EMOC purchased and transported and EMC received and processed at its Baton Rouge Refinery during June and July of 2025.[1] Plaintiffs contend that the "Anchor Project," a seven-well subsea development and semi-submersible production unit located on the U.S. Outer Continental Shelf, "is more probably than not" the source of zinc contamination in the U.S. Gulf Coast pipeline network through which this oil was transported.[2] Plaintiffs also allege

---

[1] Amended Complaint, ECF No. 65 (hereinafter "Am. Compl.") at ¶ 1; *see generally id.* at ¶¶ 34-47.
[2] Am. Compl. at ¶¶ 17, 52, 78.

1

that oil from the Anchor Project flows through numerous pipeline systems and is thus commingled with crude oil from sources other than the Anchor Project before reaching EMC's Baton Rouge Refinery.

Crude oil production from the Anchor Project commenced on or about August 12, 2024.[3] Plaintiffs do not allege that crude produced by the Anchor Project between August of 2024 and June of 2025 was contaminated.

Plaintiffs' explanation for the Anchor Project as the source of the contamination comes from "news reports" that Defendant Chevron U.S.A., Inc. ("Chevron") "identified a 'new well start-up' as the source of the contaminated crude oil."[4] Allegedly, during completion of this "new well," an impure, zinc-based substance entered the crude oil stream.[5] Plaintiffs allege that Chevron and Defendant TotalEnergies E&P USA, Inc. ("TotalEnergies") then "plac[ed]" the zinc-contaminated crude into the Mars Pipeline system, which is owned by Defendants Mars Oil Pipeline Company LLC ("Mars") and Shell Pipeline Company LP ("SPC").[6] By "fail[ing] to remove and prevent the introduction of contaminants at the well/platform," Plaintiffs allege, Chevron and Total "caused the low pH and zinc contamination issues."[7]

Once the crude oil was placed into the Mars Pipeline system, it was delivered to the LOOP Pipeline system and then transported to storage caverns owned by Defendant LOOP LLC in Clovelly, Louisiana.[8] Plaintiffs allege that at the LOOP facility, the contaminated crude oil was mixed with other crude oil owned by EMOC, damaging that oil.[9] That oil was then transported from the LOOP facility through the LOCAP Pipeline to the LOCAP Terminal in St. James Parish,

---

[3] Am. Compl. at ¶ 23.
[4] Am. Compl. at ¶ 38.
[5] Am. Compl. at ¶ 49.
[6] Am. Compl. at ¶ 77.
[7] Am. Compl. at ¶ 78.
[8] Am. Compl. at ¶ 27.
[9] Am. Compl. at ¶ 57.

Louisiana, and from there delivered to the Exxon Anchorage terminal and ultimately EMC's Baton Rouge Refinery.[10] So Plaintiffs also allege that defendants LOOP LLC, LOCAP LLC,  Mars, SPC, and Amberjack caused their damages by failing to reject the low pH and contaminated crude that was shipped through their pipelines.[11]

As to Wood Group, Plaintiffs allege it "provided the fully integrated design for the Anchor Project, including topside and subsea systems incorporating risers, production flowlines, export pipelines and flow assurance analysis."[12] Then at the end of their Complaint, Plaintiffs lump Wood Group together with Defendants Halliburton Energy Services ("HES"), which Plaintiffs allege performed well completion for the Anchor Project, and SLB OneSubsea ("Subsea") which Plaintiffs allege developed "certain key subsea components" of the Anchor Project.[13] Plaintiffs, without distinguishing among Wood, HES, and Subsea, allege that these defendants were "engaged in varying capacities[] on the work performed on the Anchor Project" and through this work also caused the zinc contamination of the crude oil that eventually made its way to Exxon's Refinery.[14] Plaintiffs offer no explanation connecting Wood Group's design of topside and subsea systems for a project that was completed in 2024 to the "new well completion" in or around June of 2025 that they allege caused the zinc contamination.

<div align="center">

**LAW & ARGUMENT**

</div>

I.      **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint based on a "failure to state a claim upon which relief can be granted." To survive a motion to dismiss

---

[10] Am. Compl. at ¶ 28.
[11] Am. Compl. at ¶¶ 133-34.  Amberjack owns a pipeline that also ships crude oil to the Mars system. *Id.* at ¶¶ 10, 25.
[12] Am. Compl. at ¶ 16, 22.
[13] Am. Compl. at ¶¶ 14-15; 137-47.  The Amended Complaint also groups Halliburton Company in with these defendants, but Plaintiffs have since dismissed Halliburton Company without prejudice. ECF No. 73.
[14] Am. Compl. at ¶¶

<div align="center">3</div>

filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

**II.     Plaintiffs fail to state a negligence claim against Wood Group.**

Plaintiffs do not allege they have any contractual relationship with Wood Group pursuant to which Wood Group owed obligations. Instead, Plaintiffs assert a single cause of action against Wood Group, for negligence. To state a claim for negligence, a plaintiff must allege that (1) a defendant had a duty to conform his conduct to a specific standard (the "duty" element); (2) the defendant's conduct failed to conform to that standard (the "breach" element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the "cause-in-fact" element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the "scope of protection" element); and (5) the conduct caused actual damages (the "damages" element). *See In re Katrina Breaches Consol. Litig.*, 2007 WL 4573052, at *2 (E.D. La. Dec. 27, 2007).

If a defendant owes no duty to a plaintiff, "there can be no actionable negligence and therefore no liability." *Id.* Whether a duty is owed is determined by an inquiry into "whether the plaintiff has any law-statutory, jurisprudential, or arising from general principles of fault-to support his claim." *Id.* (quoting *Faucheaux v. Terrebonne Consolidated Gov't*, 516 So. 2d 289, 292 (1993)). And while "[l]iterally interpreted, a tortfeasor may be held liable under Article 2315 for any damage remotely caused by his or her fault, . . . [a]s a matter of policy, the courts, under the scope of duty element of the duty-risk analysis, have established limitations on the extent of

4

damages for which a tortfeasor is liable.'" *Bd. of Comm'rs of Se. Louisiana Flood Protection Auth.-E. v. Tennessee Gas Pipeline Co.*, 88 F. Supp. 3d 615, 630 (E.D. La. 2015) (quoting *Severn Place Assocs. v. Am. Bldg. Servs., Inc.*, 05-859 (La. App. 5 Cir. 4/11/06), 930 So. 2d 125, 127). "[T]he scope of protection inquiry asks whether the enunciated rule or principle of law extends to or is intended to protect *this plaintiff* from *this type of harm* arising in *this manner*." *Roberts v. Benoit*, 605 So. 2d 1032, 1044-45 (La. 1991) (quotation omitted, emphasis in original).

While Louisiana law recognizes that design professionals, like Wood Group, can owe a duty of care even in the absence of privity of contract, "[t]he mere fact that an engineer or architect was involved in the construction process and had contractual duties to [an owner] does not create an all-encompassing duty to protect everyone from every risk which could be encountered during the course of the project." *Bonilla v. Verges Rome Architects*, 2023-928 (La. 3/22/24), 382 So. 3d 62, 67-68 (quoting *Black v. Gorman-Rupp*, 00-1223 (La. App. 4 Cir. 7/11/01), 791 So. 2d 793, 795. So, for example, while an architect on a project might owe a duty to a subcontractor on the same project to furnish acceptable shop drawings, an architect does not owe a duty to protect a neighboring property owner from harm. *See N. Clark, L.L.C. v. Chisesi*, 2016-0599 (La. App. 4 Cir. 12/7/16) 202 So. 3d 1013, 1020-21 (analyzing *Gurtler, Hebert & Co., Inc. v. Weyland Machine Shop, Inc.*, 405 So. 2d 660 (La. App. 4 Cir. 1981)).

Plaintiffs assert that the duty owed by Wood Group here is "the duty to exercise reasonable care to ensure that the performance of their work did not cause damages to the other users of the common carrier network and downstream recipients of crude oil from this network, including EMOC and EMC."[15] This purported duty stretches far beyond the limit of damages for which a design professional is liable. The "work" that Wood Group performed, according to Plaintiffs,

---

[15] Am. Compl. at ¶ 140.

involved "provid[ing] the fully integrated design for the Anchor Project."[16] Like the architect in *Chisesi* that did not owe a duty to neighboring homeowners, Wood Group owed no duty in connection with its design work to protect Plaintiffs from the harm they allegedly suffered. Plaintiffs' damages are not within the scope of risk that any duty Wood Group may have owed was intended to protect against.

Even assuming Wood Group owed a general duty to perform its design work reasonably, that duty would not extend to far-away purchasers and processors of crude oil, like Plaintiffs here. The risk that Anchor Project crude oil would be contaminated during a new well completion performed by oilfield service contractors in deepwater on the Outer Continental Shelf, which was then placed in the Mars Pipeline system by Chevron and TotalEnergies and commingled with crude oil from other wells, and then transported, stored, and commingled with other crude oil by LOOP LLC, LOCAP LLC, Mars, SPC, and Amberjack, eventually causing economic harm to EOMC and EMC when the oil was received by EMC in Baton Rouge, is "clearly outside the ambit of protection contemplated by the imposition" of any duty Wood Group owed in connection with its work on designing the Anchor Project. *See Benoit*, 605 So. 2d at 1046.

Because Plaintiffs fail to allege a duty owed to them by Wood Group, they fail to state a claim for negligence.

### III.    Plaintiffs' negligence claim against Wood Group is facially implausible.

Plaintiffs' negligence claim against Wood Group fails for an additional reason: Plaintiffs have failed to plead facts that would allow this court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* 556 U.S. at 678 (2009). In their blanket allegations against Wood Group, HES, and SubSea, Plaintiffs allege that those three defendants:

---

[16] Am. Compl. at ¶ 16, 22.

(1) "allow[ed] or cause[d] . . . the introduction of zinc contaminated completion fluid, or some other contaminant containing zinc, into the crude oil which was then introduced into the U.S. Gulf Coast pipeline network;[17]

(2) fail[ed] to produce an isolation strategy for acids used in the completion process, allowing these acids to be introduced into the crude oil which was then introduced into the U.S. Gulf Coast pipeline network;[18] and

(3) "permitt[ed] or caus[ed] the introduction of zinc-based scavengers into the crude oil which was then introduced into the U.S. Gulf Coast pipeline network.[19]

As set forth below, these allegations are facially defective because they do not plead specific conduct by Wood Group (or by any of the three lumped-together defendants). But even assuming those allegations were directed solely and specifically to Wood Group, they amount to nothing more than "conclusory allegations and unwarranted deductions of fact," which this Court need not accept as true, even at the motion to dismiss stage. *See Thornton v. Lymous*, 850 Fed. App'x 320, 322 n. 10 (5th Cir. 2021) (mem. op.) (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)). The specific actions that Plaintiffs allege this group of defendants took all relate to well completion or well and pipeline operation. None of that conduct can be reasonably attributed to a duty owed by Wood Group, which is, as Plaintiffs allege, a design professional. Plaintiffs point to no defect in design of the Anchor Project as a cause of their damages. It is facially implausible that Wood Group could have caused Plaintiffs' alleged damages.

## IV.   Plaintiffs' negligence claim against Wood Group constitutes impermissible group pleading.

Plaintiffs make only one allegation specific to Wood Group in their Amended Complaint—

---

[17] Am. Compl. at ¶ 141.
[18] Am. Compl. at ¶ 142.
[19] Am. Compl. at ¶ 143.

that Wood Group "provided the fully integrated design for the Anchor Project, including topside and subsea systems incorporating risers, production flowlines, export pipelines and flow assurance analysis."[20] Plaintiffs' other allegations against Wood Group are not directed to Wood Group specifically; instead, the allegations are directed without distinction to HES, Subsea, and Wood Group.[21]

Plaintiffs allege, for example, that "HES, Subsea, and Wood had the duty to exercise reasonable care to ensure that the performance of their work did not cause damage to the other users of the common carrier network and downstream recipients of crude oil from this network, including EMOC and EMC."[22] Plaintiffs do not explain what "work" any of these defendants individually performed.  Similarly, Plaintiffs allege that "HES, Subsea, and/or Wood . . . breached this duty, by their negligent work, by permitting or causing the introduction of zinc-based scavengers into the crude oil which was then introduced into the U.S. Gulf Coast pipeline network."[23]  Plaintiffs' allegations are so non-specific that they go so far as to allege that "HES, Subsea, and/or Wood caused, *either individually or in combination*, caused [sic] the crude oil from the Anchor Project to be out-of-specification owing to its low pH and contamination with zinc."[24]

These "vague, non-specific allegations . . . fail to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)." *Tow v. Buhlman*, 2016 WL 1722246, at *17 (E.D. La. Apr. 29, 2016). Because Rule 8's notice pleading requirements "entitle 'each defendant…to know what he or she did that is asserted to be wrongful,' allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss." *Id*. (quoting *Bank of Am., N.A. v. Knight*,

---

[20] Am. Compl. at ¶ 16, 22.
[21] Am. Comp. at ¶¶ 139-147.
[22] Am. Compl. at ¶ 140.
[23] Am. Compl. at ¶ 143.
[24] Am. Compl. at ¶ 144 (emphasis added).

725 F.3d 815, 818 (7th Cir. 2013)). Because Plaintiffs have failed to allege any specific facts regarding conduct by Wood Group causing the damage that they claim, Plaintiffs fail to state a claim against Wood Group.

<div align="center">CONCLUSION</div>

Plaintiffs have failed to state a claim for negligence against Wood Group. That claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

<div style="margin-left:40%">

Respectfully submitted,

**MILLER, THIBODEAUX, DYSART, VEITH & PASCHAL, LLC**

*/s/ Rebekka C. Veith*
Kerry J. Miller (No. 24562)
Paul C. Thibodeaux (No. 29446), T.A.
Daniel J. Dysart (No. 33812)
Rebekka C. Veith (No. 36062)
Monica L. Bergeron (No. 39124)
Brennan F. O'Keefe (No. 40474)
643 Magazine Street, Suite 405
New Orleans, Louisiana 70130
Telephone: (504) 977-9150
Facsimile: (504) 977-9151
kmiller@mtdvp.com
pthibodeaux@mtdvp.com
ddysart@mtdvp.com
rveith@mtdvp.com
mbergeron@mtdvp.com
bokeefe@mtdvp.com

*Counsel for Wood Group USA, Inc.*

</div>

<div align="center">**CERTIFICATE OF SERVICE**</div>

I hereby certify that on this 2nd day of April, 2026, I filed a copy of the foregoing pleading with the CM/ECF system, which delivered an e-mail copy of this pleading to counsel of record.

<div style="margin-left:40%">

*/s/ Rebekka C. Veith*
Rebekka C. Veith

</div>

<div align="center">9</div>