**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EXXONMOBIL OIL CORPORATION, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 25-2001** |
| **MARS OIL PIPELINE COMPANY, LLC, ET AL.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court is a Motion to Stay[1] filed by Defendant LOCAP, LLC ("LOCAP"). In this litigation, Plaintiffs ExxonMobil Oil Corporation ("EMOC") and Exxon Mobil Corporation ("EMC") (collectively, "Plaintiffs") bring claims against Defendants Mars Oil Pipeline Company, LLC ("Mars"), Chevron U.S.A., Inc. ("Chevron"), TotalEnergies E&P USA, Inc. ("TotalEnergies"), LOOP, LLC ("LOOP"), Amberjack Pipeline Company, LLC ("APC"), Shell Pipeline Company, LP ("SPC"), LOCAP, Halliburton Energy Services, Inc. ("HES"), Wood Group USA, Inc. ("Wood"), and OneSubsea, LLC ("SubSea") (collectively, "Defendants"), to recover damages for allegedly contaminated crude oil that it purchased and/or received from Defendants.[2] LOCAP moves the Court to stay this matter pending the resolution of EMOC's administrative complaint filed before the Federal Energy Regulatory Commission ("FERC").[3] Plaintiffs oppose the motion.[4] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 44.

[2] Rec. Doc. 65.

[3] Rec. Doc. 44-1 at 7.

[4] Rec. Doc. 62.

1

## I. Background

In the Amended Complaint, Plaintiffs allege that crude oil purchased by EMOC and transported to EMC's Baton Rouge Refinery was low in pH and contaminated with zinc, which was mixed with previously non-contaminated crude oil owned by EMOC, thereby "physically damaging" EMOC's non-contaminated crude oil and causing "upset conditions" at the Baton Rouge Refinery.[5] Plaintiffs allege that the crude oil was produced by the Anchor Project[6] and passed through a network of pipelines whereby it was delivered to EMC's Baton Rouge Refinery.[7]

Plaintiffs detail each Defendant's alleged involvement in the Anchor Project and the pipeline network that transported the allegedly contaminated crude oil as follows: the Anchor Project is a joint venture between Chevron and TotalEnergies, with each company holding a working interest in the project; HES performed the well completion for the Anchor Project; SubSea developed certain key subsea components of the Anchor Project; Wood provided the design for the Anchor Project; Mars own the Mars Pipeline System, which Plaintiffs allege the contaminated oil was transported within; SPC is the controlling parent company and operator of Mars; LOOP owns the LOOP System, consisting of a deepwater port, pipeline, and storage facility, through which Plaintiffs allege the contaminated oil was also transported within; APC owns the Amberjack Pipeline System, through which Plaintiffs allege the contaminated oil was also transported within; and LOCAP owns the LOCAP Pipeline through which Plaintiffs allege the contaminated oil was also transported within.[8]

---

[5] Rec. Doc. 65 at 9.

[6] The Anchor Project is an offshore oil well facility located approximately 140 miles from the Louisiana Coast on the U.S. Outer Continental Shelf. Rec. Doc. 65 at 6.

[7] Rec. Doc. 65 at 9–10.

[8] *Id.* at 3–5, 10.

After discovery of the contaminated oil, Plaintiffs allege that EMOC took samples of earlier batches of crude oil retained from the LOCAP and Mars Pipelines from June 2025, which allegedly "showed fluctuating levels of zinc."[9] Further, Plaintiffs aver that zinc does not typically occur naturally in produced crude oil, thus the elevated levels of zinc indicated the presence of impure substances.[10] Moreover, Plaintiffs claim that the network of pipelines connected to the Anchor Project operate under rate tariffs approved by FERC.[11] Thus, due to the contamination of the crude oil received by Plaintiffs and the alleged failure of Defendants to comply with the relevant FERC tariffs governing the pipeline network, Plaintiffs bring various claims against Defendants including: breach of the warranty against redhibitory defects; a Louisiana Products Liability Act claim; negligence; and breach of contract.[12]

On September 25, 2025, Plaintiffs filed a Complaint in this Court for damages.[13] On October 24, 2025, EMOC filed a Complaint against LOCAP before FERC (the "FERC Action"), requesting that FERC direct LOCAP to ensure "connecting carriers ship only on-spec crude oil and follow its tariff to prohibit shippers from tendering product for shipment on its system that has been contaminated with an impure substance."[14] Alternatively, EMOC requests that FERC revise the LOCAP Tariff to ensure no further harm occurs.[15]

---

[9] *Id.* at 10.

[10] *Id.*

[11] *Id.* at 7.

[12] *Id.* at 16–32.

[13] Rec. Doc. 1.

[14] Rec. Doc. 44-4 at 1.

[15] *Id.* at 17.

On November 24, 2025, LOCAP responded to the FERC Complaint, stating that it has followed the tariff, and therefore, EMOC failed to state a valid claim.[16] LOCAP further asserted that EMOC violated Section 9 of the Interstate Commerce Act (the "ICA") by filing Complaints on the same matter in two separate forums, namely this Court and before FERC.[17] On December 10, 2025, EMOC responded to LOCAP's Answer, asserting that the FERC Complaint asks for FERC action on a FERC-regulated tariff, consistent with FERC's authority and jurisdiction under the ICA, whereas EMOC did not assert any claims for duties of liabilities under the ICA in the Federal Court Complaint.[18] The FERC proceedings are still pending.[19]

On December 23, 2025, LOCAP filed a Motion to Stay in this Court on the basis that the FERC Complaint and the litigation pending in this Court are premised on the same underlying allegations, namely the alleged violation of Tariff 12.28.0.[20] On February 2, 2026, Plaintiffs filed an Opposition to the motion.[21] On February 13, 2026, LOCAP filed a reply in further support of the motion.[22]

---

[16] Rec. Doc. 44-5.

[17] Rec. Doc. 44-6.

[18] *Id.* at 3.

[19] FERC eLibrary Docket No. OR26-1-000, https://elibrary.ferc.gov/eLibrary/docketsheet?docket_number=OR26-1-000&sub_docket=All&dt_from=1960-01-01&dt_to=2026-05-04&chklegadata=false&pageNm=dsearch&date_range=custom&search_type=docket&date_type=filed_date&sub_docket_q=Allsub&sid=4cb92200-59fd-4c24-aefd-65e62e82f0e9 (last visited May 11, 2026).

[20] Rec. Doc. 44.

[21] Rec. Doc. 62.

[22] Rec. Doc. 69.

## II. Parties' Arguments

### A.     LOCAP's Arguments in Support of the Motion

LOCAP asserts that the FERC Action is premised on the allegations that Items No. 5 and 10 of the applicable FERC Tariff 12.28.0 (the "Tariff") "specifically exclude the shipment of zinc or any other zinc derivatives on the system, and that LOCAP thus failed to follow its tariff by allowing a shipper to continue introducing contaminated crude oil even after LOCAP was made aware of the zinc contamination."[23] Further, LOCAP avers that Plaintiffs premise the instant negligence claim against LOCAP on the low pH and contaminated crude oil, which was transported on the LOCAP Pipeline pursuant to the applicable FERC tariff.[24] LOCAP concedes that EMOC seeks different relief in each forum but maintains that the underlying basis of liability in each proceeding requires an interpretation of the Tariff.[25]

Next, LOCAP discusses the three factors considered by district courts when considering whether a stay should be granted.[26] First, LOCAP contends that it would be subjected to undue hardship by litigating in two forums on the same issues, specifically where the FERC Action Complaint requests direction regarding the same Tariff at issue here.[27] Further, LOCAP asserts that staying this matter pending resolution of the FERC Action is consistent with the primary jurisdiction doctrine, by which a district court with subject matter jurisdiction may under

---

[23] Rec. Doc. 44 at 1–2.

[24] *Id.* at 1–2.

[25] *Id.* at 2.

[26] In determining whether a stay should be granted, "courts consider the following factors as set out *in Landis v. North American Co.*: (1) any hardship imposed on the moving party by proceeding with the action, (2) any prejudice to the non-moving party if the stay is granted, and (3) the interests of judicial economy." *Falcone v. Anco Insulations, Inc.*, No. 21-233, 2021 WL 3679616 at *4 (E.D. La. July 20, 2021).

[27] Rec. Doc. 44 at 3.

appropriate circumstances defer to an administrative agency that also has non-exclusive jurisdiction based on its determination that the benefits of obtaining aid from that other forum outweigh the need for expeditious litigation.[28] Specifically, LOCAP submits that in the FERC Action, FERC may consider whether the Tariff "specifically excludes the shipment of zinc or any other zinc derivatives on the system" and that LOCAP thus "failed to follow its tariff by allowing a shipper to continue introducing crude oil contaminated even after LOCAP was made aware of the zinc contamination."[29] Because the Tariff is also at issue in the instant matter, LOCAP asserts that without a stay it would be forced to litigate the same issue in two different forums, risking potentially inconsistent results.[30]

Second, LOCAP contends that Plaintiffs will not be prejudiced by the stay for the same reasons that LOCAP will be prejudiced if the instant proceedings are not stayed.[31] Particularly, LOCAP avers that Plaintiffs will also benefit from FERC's exercise of primary jurisdiction regarding that application of the Tariff as to LOCAP, whether LOCAP complied with the Tariff, and whether any other basis of liability under the Tariff exists.[32] Further, LOCAP submits that Plaintiffs will avoid being subject to discovery in two different forums, incurring the expenses of retaining additional experts and risking being subject to two different outcomes in the instant proceedings and the FERC Action.[33] Moreover, LOCAP points out that the same transaction or occurrence is at issue as to all defendants, and Plaintiffs' negligence claim against various other

---

[28] *Id.* (*citing REO Indus., Inc. v. Natural Gas Pipeline Co. of Am.*, 932 F.2d 447 (5th Cir. 1991)).

[29] Rec. Doc. 44-1 at 6.

[30] *Id.* at 9.

[31] *Id.* at 11.

[32] *Id.*

[33] *Id.* at 12.

defendants involves consideration of similar tariffs, whether issued by FERC or the corresponding state regulatory agency.[34] Therefore, LOCAP asserts that FERC's guidance may be instructive or informative to this Court as to the other defendants.[35]

Third, LOCAP contends that staying this matter pending resolution of the FERC Action will serve judicial economy.[36] LOCAP avers that the FERC Action may inform this Court's interpretation or analysis of the Tariff relative to LOCAP, and likewise provide instructive guidance relative to the interpretation or analysis of the other tariffs at issue in this proceeding.[37] Further, LOCAP asserts that engaging in discovery and litigation in both actions would result in litigation proceeding in a haphazard and inefficient manner.[38] Thus, LOCAP argues that the Court should stay this matter pending resolution of the FERC Action.[39]

### B.     *Plaintiffs' Arguments in Opposition of the Motion*

In opposition, Plaintiffs argue that: (1) LOCAP will not suffer undue hardship by allowing this matter to proceed; (2) Plaintiffs will be prejudiced by the imposition of a stay; and (3) judicial economy will best be served by allowing this matter to proceed.[40]

Plaintiffs argue that LOCAP will not suffer undue prejudice by allowing this matter to proceed, because Plaintiffs are requesting different relief in each proceeding.[41] Plaintiffs aver that

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 13.

[40] Rec. Doc. 62 at 1.

[41] *Id.* at 3.

they are seeking monetary damages from LOCAP and the other Defendants in the instant suit, whereas in the FERC Action Plaintiffs are seeking "an interpretation of the applicable tariff (Tariff 12.28.0) and corresponding instruction to LOCAP regarding its compliance with that tariff."[42] Therefore, Plaintiffs argue that the FERC Action is limited to LOCAP's compliance with the Tariff, and does not address the damages that Plaintiffs suffered.[43] Plaintiffs concede that the Tariff is at issue in both proceedings, but in a different manner in each proceeding.[44]

In the instant proceeding Plaintiffs allege that the Tariff created a duty on the part of LOCAP, in favor of Plaintiffs and other downstream recipients of crude oil shipped on the pipeline network, to exercise reasonable care and exercise its right to reject out-of-specification shipments.[45] In the FERC Action EMOC is requesting that FERC interpret the Tariff and direct LOCAP to "ensure connecting carriers ship only on-spec crude oil and follow its tariff to prohibit shippers from tendering product for shipment on its system that has been contaminated with an impure substance[,]" and "direct LOCAP to ensure that it follows its tariff without delay upon determining that a shipper has tendered contaminated product to its system."[46] Plaintiffs aver that the duty owed by LOCAP to Plaintiffs and its obligations in relation to the Tariff are conceptually related, but distinct.[47] Further, Plaintiffs assert that the question of whether or not the Tariff creates a duty to ensure that shippers only tender shipments on its pipeline that are uncontaminated is not a question that requires the factual and technical expertise of FERC to resolve, but rather only

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at 4 (quoting Rec. Doc. 44-2).

[47] *Id.*

requires an interpretation of the language of the tariff.[48] Thus, Plaintiffs contend that the Court is not bound to give deference to FERC's interpretation of the Tariff, meaning there is no reason to wait for the FERC Action to resolve before allowing this lawsuit to proceed.[49] Moreover, Plaintiffs aver, even if the Court does find that FERC's interpretation of the Tariff would be informative to the issues in the instant matter, a stay would only allow documents to be lost and memories to fade.[50]

Plaintiffs also assert that they will be unduly prejudiced if the stay is granted.[51] Plaintiffs contend that this suit consists of claims against multiple defendants, aside from LOCAP, which have nothing to do with the FERC Action.[52] Thus, Plaintiffs contend that the Court should allow discovery to proceed to ensure the preservation of evidence and avoid prejudicing Plaintiffs, rather than staying the suit as a whole because of a tangential connection between the FERC Action against a single defendant.[53]

Next, Plaintiffs aver that denying the stay will serve the interest of judicial economy.[54] Plaintiffs contend that even if the issues overlap between these two proceedings, "there is no reason why discovery and issues that overlap in these two proceedings cannot be dealt with now, in a coordinated manner."[55] Plaintiffs assert that this will save the resources of both parties and the

---

[48] *Id.* at 5.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 6.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

Court, in contrast to staying the instant proceedings and then having to repeat discovery at a later date.[56]

Plaintiffs also aver that LOCAP's reliance on the primary jurisdiction doctrine is misplaced.[57] As an initial matter, Plaintiffs assert that the primary jurisdiction doctrine may no longer be good law, in light of the Supreme Court's decision in *Loper Bright Enter. v. Raimondo*.[58] However, to the extent that the Court applies the primary jurisdiction doctrine, Plaintiffs contend that it does not support the imposition of a stay here.[59] Plaintiff assert that the questions in each proceeding are not identical, and that the issues before this Court do not extend beyond the conventional experience of the Court.[60] Plaintiffs aver that whether or not LOCAP should have permitted contaminated oil to be shipped on its pipeline, and what duties it has in relation to preventing the shipment of contaminated oil on its pipeline, are issues which do not require the specialized expertise of FERC to resolve.[61] Hence, even if the primary jurisdiction doctrine does apply, Plaintiffs argue that it does not weigh in favor of an issuance of the requested stay.[62]

## C.    *LOCAP's Arguments in Further Support of the Motion*

In reply, LOCAP argues that in both the instant proceeding and the FERC Action, EMOC ultimately asserts that LOCAP did not act consistently with the requirements of the Tariff.[63]

---

[56] *Id.* at 6–7.

[57] *Id.* at 7.

[58] *Id.* at 7–8 (citing 603 U.S. 369 (2024)).

[59] *Id.* at 8.

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] Rec. Doc. 69 at 1.

Further, LOCAP contends that the fact that EMOC is requesting different relief in each forum is irrelevant to the stay request.[64] LOCAP reiterates that FERC may consider the Tariff issues underlying the negligence claim in the instant matter and in the FERC Action.[65] Specifically, LOCAP avers that a FERC determination that LOCAP complied with the Tariff would foreclose tort liability in this matter.[66] Moreover, LOCAP asserts that *Loper Bright* has no bearing on FERC's primary jurisdiction to interpret its own tariffs, or resultingly the instant request for a stay.[67] LOCAP contends that in spite of the ruling in *Loper Bright* courts remain "well-advised to consider agency interpretations."[68] Therefore, LOCAP avers that deferring to FERC's competent interpretation and application of its own Tariffs is consistent with the primary jurisdiction doctrine.[69] Additionally, LOCAP reasserts its arguments that the non-moving parties will not be prejudiced by the stay and that a stay will promote judicial economy.[70]

### III. Legal Standard

In *Landis v. North American Co.*, the Supreme Court recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[71] The Supreme Court noted that "how this can best be done calls for the exercise of judgment, which

---

[64] *Id.*

[65] *Id.* at 2.

[66] *Id.*

[67] *Id.*

[68] *Id.* at 2–3 (quoting *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 171 (5th Cir. 2024)).

[69] *Id.* at 3.

[70] *Id.* at 4–5.

[71] 299 U.S. 248, 254 (1936).

must weigh competing interests and maintain an even balance."[72] Therefore, a district court has "discretionary power to stay proceedings before it in the control of its docket and in the interests of justice."[73] In determining whether a stay should be granted, "courts consider the following factors as set out in *Landis v. North American Co.*: (1) any hardship imposed on the moving party by proceeding with the action, (2) any prejudice to the non-moving party if the stay is granted, and (3) the interests of judicial economy."[74]

### IV. Analysis

LOCAP argues that the three *Landis* factors weigh in favor of granting the stay and that it would be prejudiced by simultaneously defending claims, which arise under the same Tariff, in the FERC Action and the instant proceedings. LOCAP also argues that allowing the two cases to proceed simultaneously could lead to inconsistent rulings. Further, LOCAP asserts that the Court should apply the primary jurisdiction doctrine and abstain from exercising jurisdiction until the FERC Action is resolved. The Court begins by addressing the primary jurisdiction question before proceeding to the *Landis* factors.

### A.    *The Primary Jurisdiction Doctrine*

The doctrine of primary jurisdiction is a doctrine of judicial abstention whereby "a court which has jurisdiction over a matter, nonetheless defers to an administrative agency for an *initial decision* on questions of fact or law within the peculiar competence of the agency."[75] Further, in *Columbia Gas Transmission Corp. v. Allied Chemical Corp.,* the Fifth Circuit held that only a

---

[72] *Id.* at 254–55.

[73] *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).

[74] *Falcone*, 2021 WL 3679616 at *4 (E.D. La. July 20, 2021) (Brown, J.) (citing *Cortez v. Lamorak Insurance Co.*, 2021 WL 2018073, at *1 (E.D. La., 2021)).

[75] *REO Indus., Inc. v. Natural Gas Pipeline Co. of Am.*, 932 F.2d 447 (5th Cir. 1991) (emphasis in original).

fact-intensive enforcement issue should be referred to FERC, while the district court must retain jurisdiction of "nonenforcement regulatory issues" which were "legal and not factual in nature."[76] However, the Fifth Circuit later held that "it is sometimes appropriate to refer questions of law to an agency[,]" and that the primary jurisdiction doctrine requires the district court to "balance the assistance potentially provided by an agency's specialized expertise against the litigants' certainty of delay."[77] Moreover, under the primary jurisdiction doctrine, "[r]esolution of [] nonenforcement regulatory issues are legal and not factual in nature."[78]

In opposition, Plaintiffs assert that the primary jurisdiction doctrine may be inconsistent with the Supreme Court's decision in *Loper Bright*, but that even if the doctrine is still good law, it does not support the imposition of a stay because the Court is capable of interpreting the regulations at issue by drawing from its conventional experience. Under *Loper Bright*, a court must exercise its own independent judgment in determining whether an agency has acted within its statutory authority.[79] However, "careful attention to the judgment of the Executive Branch may help inform that inquiry."[80]

The question before FERC in the FERC Action is whether LOCAP complied with Tariff 12.28.0. In other words, whether the Tariff prohibits zinc contents in crude oil and places the responsibility for the zinc-laden crude oil with LOCAP, and if so to what extent. Although LOCAP focuses on Tariff 12.28.0, at Items No. 5 and 10, the Amended Complaint instead cites Tariff

---

[76] *Occidental Chem. Corp. v. La. PSC*, 810 F.3d 299, 310 (5th Cir. 2016) (citing 652 F.2d 503, 520 n.15 (5th Cir. 1981)).

[77] *Id.*

[78] *Columbia Gas Transmission Corp.*, 652 F.2d at 520 n.15.

[79] *Loper Bright Enters.*, 603 U.S. at 412.

[80] *Id.* at 412–13.

12.28.0, at Item No. 15 as a basis for the negligence claim against LOCAP, which is titled

"Specification As To Quality Received." Item No. 15 states:

> Good merchantable petroleum of the gravity of twenty degrees (20°) API (American Petroleum Institute) or higher which is properly settled and contains not more than two percent (2%) of basic sediment, water, and other impurities, and has a temperature not in excess of one hundred twenty degrees (120°) Fahrenheit will be accepted for transportation. No petroleum will be accepted unless its gravity, viscosity, and other characteristics are such that it will be readily susceptible of transportation through the Carrier's existing facilities, and it will not materially affect the quality of other shipments or cause disadvantage to other shippers and/or the Carrier.[81]

Tariff 12.28.0, at Item No. 5 is defines "Carrier" as, "'Carrier' as herein used means LOCAP

LLC."[82]

LOCAP argues that a stay as to all Defendants is warranted because the same transaction

or occurrence is at issue as to all defendants, and Plaintiffs' negligence claims against various other

defendants "involve consideration of similar tariffs, whether issued by FERC or the corresponding

state regulatory agency. FERC's potential consideration of Tariff 12.28.0 as to LOCAP may

therefore be instructive or informative as to the other defendants."[83] However, FERC Tariff

12.28.0, which explicitly defines LOCAP as the "Carrier" with duties under the Tariff, is the only

FERC Tariff cited in the Amended Complaint. All of the other tariffs cited in the Amended

Complaint, which apply to the remaining Defendants, are Louisiana Public Service Commission

("LPSC") Tariffs.[84] Further, FERC and LPSC are clearly two separate entities that do not always

agree on regulatory interpretations or procedures as evidenced by the multiple suits between the

---

[81] Rec. Doc. 44-3 at 3.

[82] *Id.*

[83] Rec. Doc. 44-1 at 12.

[84] Rec. Doc. 65 at 7, 25, 27, 28. (citing LPSC Tariffs Nos. 2.22.0, 2.23.0, 3.31.0, 3.32.0, 11.4.0, 13.12.0).

two entities.[85] Therefore, the Court is not persuaded that the FERC Action will provide guidance to the Court regarding the claims against any of the Defendants, aside from LOCAP. Thus, LOCAP has not shown that the primary jurisdiction doctrine supports staying Plaintiffs' claims against the other Defendants.

The FERC action may impact some of Plaintiffs' claims against LOCAP. The issue of whether the Tariff imposed a duty on LOCAP is a question of law for the Court to decide. The Court may benefit from FERC's regulatory interpretation to determine whether zinc is considered an "impurit[y]," and/or whether, the presence of zinc "materially affect[s] the quality of other shipments or cause[s] disadvantage to other shippers and/or the Carrier." Further, such a determination would be based on technical industry standards supplied by FERC, given that FERC's own Tariff is at issue.

Nevertheless, a stay of this matter as to LOCAP at this juncture would undoubtedly cause scheduling issues once the stay is lifted, leaving the parties to either scramble to engage in discovery with LOCAP to meet the relevant discovery deadlines or request a continuance to conduct discovery with LOCAP. Further, the parties have not indicated when they anticipate the FERC Action being resolved, and the instant matter is in the early stages of litigation with the discovery deadline scheduled over nine months out on March 5, 2027. Therefore, the Court agrees with Plaintiffs that if the FERC Action is still pending after discovery has concluded in this matter, it would be more appropriate for LOCAP to re-urge the motion to stay at that time. LOCAP has not shown that the primary jurisdiction doctrine supports staying the case at this time.

---

[85] *See e.g. Louisiana Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 771 F.3d 903 (5th Cir. 2014); *Louisiana Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 10 F.4th 839 (D.C. Cir. 2021); *Louisiana Pub. Serv. Comm'n v. Fed. Energy Regul. Comm'n*, 341 Fed. App'x 649 (D.C. Cir. 2009).

**B.      *The Landis Factors***

LOCAP also has not demonstrated that the *Landis* factors weigh in favor of staying the case at this time. As to the first *Landis* factor, LOCAP asserts that it would be subject to undue hardship if the stay is not granted by litigating in two forums on the same issue. Plaintiffs premise their negligence claim against LOCAP on the interpretation that the Tariff prohibits zinc in the pipelines, thus arguing that the LOCAP breached its duty by allowing zinc-contaminated crude oil to enter the pipeline and flow downstream. However, if zinc is not a precluded substance under the Tariff, then there would be no duty for LOCAP to prevent it from entering the pipeline or flowing downstream. But as discussed above, whether the stay is granted or not, LOCAP will have to engage in discovery as part of the FERC Action, which will likely consist of much of the same evidence at issue here. Hence, allowing discovery in this matter to proceed prior to the FERC Action being resolved will not unduly prejudice LOCAP. Accordingly, the hardship imposed on the moving party *Landis* factor weighs in favor of denying the stay.

As to the second *Landis* factor, LOCAP contends that Plaintiffs will not be prejudiced by the stay because they will also benefit from FERC's clarification of whether LOCAP complied with the Tariff, and whether any other basis for liability exists under the Tariff. Plaintiffs argue that they will be prejudiced by a stay because they will be denied the opportunity to conduct discovery. This matter is set for trial on June 7, 2027. If the stay is granted, there is no way to predict when the FERC Action will be resolved. Allowing the other parties to proceed with discovery while LOCAP sits on the sidelines will increase Plaintiffs' burden to pursue discovery with LOCAP after the stay is lifted. Thus, staying this matter at this time would only serve to increase the likelihood that an issue or delay will arise during discovery. Therefore, the Court finds that Plaintiffs will be unduly prejudiced if the stay is granted.

16

As to the third *Landis* factor, judicial economy weighs in favor of allowing discovery to proceed in this case. Given the complex factual issues raised and the involvement of numerous Defendants, all of the parties will benefit from participating in discovery. Thus, the judicial economy factor weighs in favor of denying the stay.

Hence, the Court finds that all three *Landis* factors weigh in favor of denying a stay at this stage of the litigation. However, should the FERC Action remain pending upon the close of discovery in this matter, LOCAP is free to file a re-urged motion to stay. Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Stay[86] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this  29th  day of May, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[86] Rec. Doc. 44.

17