**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EXXONMOBIL OIL CORPORATION, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 25-2001** |
| **MARS OIL PIPELINE COMPANY, LLC, ET AL.** | **SECTION: "G"(2)** |

**ORDER AND REASONS**

Before the Court is a Motion to Dismiss[1] filed by Defendant LOCAP, LLC ("LOCAP"). In this litigation, Plaintiffs ExxonMobil Oil Corporation ("EMOC") and Exxon Mobil Corporation ("EMC") (collectively, "Plaintiffs") bring claims against Defendants Mars Oil Pipeline Company, LLC ("Mars"), Chevron U.S.A., Inc. ("Chevron"), TotalEnergies E&P USA, Inc. ("TotalEnergies"), LOOP, LLC ("LOOP"), Amberjack Pipeline Company, LLC ("APC"), Shell Pipeline Company, LP ("SPC"), LOCAP, Halliburton Energy Services, Inc. ("HES"), Wood Group USA, Inc. ("Wood"), and OneSubsea, LLC ("SubSea") (collectively, "Defendants"), to recover damages for allegedly contaminated crude oil[2] that it purchased and/or received from Defendants.[3] LOCAP moves the Court to dismiss the claims against it, asserting that Plaintiffs fail to state a plausible claim for relief.[4] Plaintiffs oppose the motion.[5] Having considered the motion, the

---

[1] Rec. Doc. 77.

[2] The terms "crude oil" and "petroleum" are used interchangeably in the parties' briefings and in this Order and Reasons.

[3] Rec. Doc. 65.

[4] Rec. Doc. 77.

[5] Rec. Doc. 86.

1

memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

In the Amended Complaint, Plaintiffs allege that crude oil purchased by EMOC and transported to EMC's Baton Rouge Refinery was low in pH and was contaminated with zinc, which was mixed with previously non-contaminated crude oil owned by EMOC, thereby "physically damaging" EMOC's non-contaminated crude oil and causing "upset conditions" at the Baton Rouge Refinery.[6] Plaintiffs allege that the crude oil was produced by the Anchor Project[7] and passed through a network of pipelines whereby it was delivered to EMC's Baton Rouge Refinery.[8]

Plaintiffs detail each Defendant's alleged involvement in the Anchor Project and the pipeline network that transported the allegedly contaminated crude oil as follows: the Anchor Project is a joint venture between Chevron and TotalEnergies, with each company holding a working interest in the project; HES performed the well completion for the Anchor Project; SubSea developed certain key subsea components of the Anchor Project; Wood provided the design for the Anchor Project; Mars owns the Mars Pipeline System; SPC is the controlling parent company and operator of Mars; LOOP operates the LOCAP Pipeline System and owns the LOOP Pipeline System, consisting of a deepwater port, pipeline, and storage facility; APC owns the Amberjack Pipeline System; and LOCAP owns the LOCAP Pipeline.[9] Plaintiffs allege that the contaminated crude oil was transported along the following pathway: from the Anchor Project, to

---

[6] Rec. Doc. 65 at 9.

[7] The Anchor Project is an offshore oil well facility located approximately 140 miles from the Louisiana Coast on the U.S. Outer Continental Shelf. Rec. Doc. 65 at 6.

[8] Rec. Doc. 65 at 9–10.

[9] *Id.* at 3–5, 10.

the Amberjack Pipeline System, to the Mars Pipeline System, to the LOOP Pipeline System and storage facility, to the LOCAP Pipeline System, then finally to EMC's Baton Rouge refinery.[10]

After discovery of the contaminated oil, Plaintiffs allege that EMOC took samples of earlier batches of crude oil retained from the LOCAP and Mars Pipelines from June 2025, which allegedly "showed fluctuating levels of zinc."[11] Further, Plaintiffs aver that zinc does not typically occur naturally in produced crude oil, thus the elevated levels of zinc indicated the presence of impure substances.[12] Moreover, Plaintiffs claim that the network of pipelines connected to the Anchor Project operate under rate tariffs approved by the Federal Energy Regulatory Commission ("FERC") and the Louisiana Public Service Commission ("LPSC").[13] Thus, due to the contamination of the crude oil received by Plaintiffs and the alleged failure of Defendants to comply with the relevant FERC and LPSC tariffs governing the pipeline network, Plaintiffs bring various claims against Defendants including: breach of the warranty against redhibitory defects claims against TotalEnergies and Chevron; Louisiana Products Liability Act claims against LOOP, TotalEnergies, and Chevron; negligence claims against Chevron, TotalEnergies, Mars, LOOP, APC, LOCAP, SPC, HES, SubSea, and Wood; and a breach of contract claim against LOOP.[14]

On September 25, 2025, Plaintiffs filed a Complaint in this Court for damages.[15] On February 25, 2026, Plaintiffs filed an Amended Complaint.[16] On that same day, LOCAP filed the

---

[10] *Id.* at 3, 7–8.

[11] *Id.* at 10.

[12] *Id.*

[13] *Id.* at 7.

[14] *Id.* at 16–32.

[15] Rec. Doc. 1.

[16] Rec. Doc. 65.

instant Motion to Dismiss.[17] On March 23, 2026, Plaintiffs filed an opposition.[18] On March 30, 2026, LOCAP filed a reply brief.[19] On July 15, 2026, the Court heard oral arguments on the motion.

## II. Parties' Arguments

### A.   LOCAP's Arguments in Support of the Motion

LOCAP asserts that Plaintiffs fail to state a plausible negligence claim against it, and therefore requests that the Court dismiss said claim.[20] LOCAP contends that Plaintiffs arguments, relative to their claims against LOCAP, rely solely on the misplaced assertion that FERC Tariff No. 12.28.0 establishes a "duty of care and standard of conduct upon which LOCAP's negligence is alleged."[21] Further, LOCAP avers that Plaintiffs cite "no authority under which Tariff 12.28.0 creates a duty in tort or establishes a standard of care between" LOCAP and Plaintiffs.[22] LOCAP asserts that on its face Tariff 12.28.0 defines LOCAP's duty as "not be[ing] required to transport petroleum except with reasonable diligence, considering the quantity of petroleum, the distance of transportation, the safety of operation, and other material factors."[23] Moreover, LOCAP contends that Tariff 12.28.0 "does not prohibit or restrict the presence of zinc or directly address the pH level required for crude petroleum tendered for shipment."[24] Additionally, LOCAP avers that Plaintiffs' assertion that LOCAP had a "general duty to conform their standard of conduct in their

---

[17] Rec. Doc. 77.

[18] Rec. Doc. 86.

[19] Rec. Doc. 90.

[20] Rec. Doc. 77 at 3.

[21] Id.

[22] Id.

[23] Id. at 3–4.

[24] Id. at 4.

operations to the standard of conduct of a reasonable person" is not sufficiently supported by facts in the Amended Complaint.[25] Thus, LOCAP argues that Plaintiffs have not pled sufficient facts to state a claim against it, and therefore the negligence claim against it should be dismissed.[26]

### B.      *Plaintiffs' Arguments in Opposition to the Motion*

In opposition, Plaintiffs argue that they have stated a plausible claim for relief, and therefore the Court should deny the instant motion.[27] Specifically, Plaintiffs assert that their negligence claim against LOCAP arises from LOCAP's "negligence in not rejecting the low pH and contaminated shipments of crude oil and thereby transporting and allowing the low pH and contaminated crude oil to contaminate EMOC's crude oil and damage EMC's Baton Rouge Refinery."[28]

Plaintiffs contend they have plausibly pled that "LOCAP had a duty to Plaintiffs, and other downstream purchasers and recipients of the crude oil shipped on their pipeline, and that LOCAP's breach of this duty was the cause of Plaintiffs damages."[29] Particularly, Plaintiffs assert that FERC Tariff 12.28.0 creates a standard of care governing shipment of crude oil on the LOCAP pipeline, at Item No. 15, which sets the "Specifications As to Quality Received," requiring that crude oil shipped on the LOCAP pipeline be "[g]ood merchantable petroleum . . .[containing] not more than two percent (2%) of basic sediment, water, and *other impurities*[.]"[30] Plaintiffs assert that LOCAP

---

[25] Rec. Doc. 77-1 at 11–12.

[26] Rec. Doc. 77 at 4.

[27] Rec. Doc. 86.

[28] *Id.* at 2.

[29] *Id.* at 4.

[30] *Id.* at 4–5 (emphasis in original).

breached its duty to adhere to this standard of care by accepting the contaminated oil in its pipeline.[31]

Alternatively, Plaintiffs aver that a standard of care is also created under Louisiana negligence law which requires LOCAP to conform its conduct to "a specific standard."[32] Plaintiffs contend that LOCAP is "bound by a standard of care to operate its pipeline in compliance with the tariff specifications just as the shippers utilizing the pipeline are required to comply with these same specifications."[33] Further, Plaintiffs assert that "Louisiana courts have regularly found the existence of a duty to conform to a specific standard of care in the absence of express statutory language creating such a duty."[34] Therefore, Plaintiffs argue that Tariff 12.28.0 creates an express and implied duty on the part of LOCAP to ensure that "contaminated crude oil is not shipped on its pipeline. It sets specifications for the crude oil that LOCAP will transport on its pipeline and obligates LOCAP to operate the pipeline with 'reasonable diligence.'"[35]

Plaintiffs assert that LOCAP itself compiled and issued Tariff 12.28.0, thereby advertising to shippers the specifications for the crude oil that it will allow to be shipped on its pipeline, "LOCAP assumed a duty and standard of reasonable care to protect shippers from the harm that could arise from the shipment of out-of specification crude oil on its pipeline."[36] Further, Plaintiffs contend that LOCAP breached this duty by allowing low pH and zinc contaminated crude oil

---

[31] *Id.* at 5.

[32] *Id.*

[33] *Id.* at 6.

[34] *Id.* at 7 (citing *Porteous v. St. Ann's Café & Deli*, 97-0837 (La. 5/29/98), 713 So. 2d 454, 457).

[35] *Id.* at 7–8.

[36] *Id.* at 8.

shipments to be transported on its pipeline to the disadvantage and injury of Plaintiffs.[37] Moreover, Plaintiffs aver that LOCAP's status as the custodian of the oil being shipped through its pipeline is enough on its own to impose a legal duty under Louisiana law.[38] Hence, Plaintiffs argue that the instant motion should be denied because they have alleged detailed facts that when taken as true, set forth plausible claims for relief.[39]

### C.    *LOCAP's Arguments in Further Support of the Motion*

In reply, LOCAP reasserts that Plaintiffs' "threadbare allegations are insufficient to state a plausible claim for relief under a theory of negligence as to LOCAP."[40] LOCAP concedes that Tariff 12.28.0 has the "force of federal law," but insists that it does not create a duty on the part of LOCAP to Plaintiffs.[41] LOCAP avers that Item No. 80 of the applicable tariff provides the extent of LOCAP's duty, which states "[t]he Carrier shall not be required to transport petroleum except with reasonable diligence, considering the quantity of petroleum, the distance of transportation, the safety of operation, and other material factors."[42] LOCAP asserts that Plaintiffs did not respond to Item No. 80's duty requirement in their opposition, therefore the Court should find that Item No. 80 is the sole applicable duty with respect to LOCAP.[43]

Further, LOCAP contends that Tariff 12.28.0 at most requires crude oil shipped through LOCAP's pipeline to be "[g]ood merchantable petroleum . . .[containing] not more than two

---

[37] *Id.* at 9.

[38] *Id.* (citing *St. Julien v. Landry*, 12-100 (La. App. 3 Cir. 6/20/12), 94 So.3d 976, 982).

[39] *Id.* at 10–11.

[40] Rec. Doc. 90 at 1.

[41] *Id.* at 2.

[42] *Id.*

[43] *Id.* (citing *Fernandez v. Am. Sugar Refin., Inc.*, No. 25-772, 2025 U.S. Dist. LEXIS 152953, at *8 (E.D. La. Aug. 8, 2025) ("[F]ailure to brief an argument in the district court waives that argument in that court.")).

percent (2%) of basic sediment, water, and other impurities[.]"[44] LOCAP submits that there is no indication or allegation that the crude oil shipped on LOCAP's pipeline did not meet these specifications, or that LOCAP had any duty beyond that contained in Item No. 80 of Tariff 12.28.0.[45] In particular, LOCAP points out that Plaintiffs' assertion that testing revealed zinc levels ranging from 9.3 to 14.2 parts per million, which is in excess of industry standards, is not an allegation that more than 2% of the crude oil contained impurities.[46] Thus, LOCAP argues that there is no basis under the tariff for the imposition of any additional duty upon it.[47]

As to Plaintiffs' custodial duty argument, LOCAP asserts that it did not have "supervision and control" of the crude oil at the time of the alleged damage, therefore LOCAP is not liable as a custodian.[48] LOCAP avers that it was not required to test any crude oil shipped by Plaintiffs for zinc.[49] Thus, LOCAP contends that did not know, or have reason to know, of any purported defect of the crude oil.[50] Accordingly, LOCAP argues that Plaintiffs have failed to state a plausible claim for relief as to LOCAP based on the FERC Tariff or under negligence theories arising from Louisiana law.

---

[44] *Id.* at 3.

[45] *Id.*

[46] *Id.* at 6.

[47] *Id.* at 3.

[48] *Id.* at 5.

[49] *Id.*

[50] *Id.*

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[51] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[52] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[53] "Factual allegations must be enough to raise a right to relief above the speculative level."[54] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[55]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[56] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[57] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[58] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[59] The complaint need not contain detailed factual allegations, but it

---

[51] Fed. R. Civ. P. 12(b)(6).

[52] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[53] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[54] *Twombly*, 550 U.S. at 555.

[55] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[56] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[57] *Iqbal*, 556 U.S. at 678–79.

[58] *Id.* at 679.

[59] *Id.* at 678.

must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[60] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[61] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[62] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[63]

### IV. Analysis

LOCAP's principal argument is that it did not have an express or implied duty under FERC Tariff 12.28.0 or under Louisiana law to ensure that the crude oil that flowed through its pipeline was free from zinc contamination or had a certain pH. Additionally, LOCAP argues that, notwithstanding any such duty, Plaintiffs have not pled sufficient facts to establish that the crude oil at issue did not meet the standards under Tariff 12.28.0. Plaintiffs argue that Tariff 12.28.0 imposes an express duty on LOCAP to ensure that the crude oil flowing downstream from its pipeline contains no more than 2% impurities, or alternatively that LOCAP is liable under Louisiana law for breaching the industry standard of care by negligently allowing contaminated crude oil to flow downstream. The Court addresses each of Plaintiffs' theories of liability in turn.

Under Louisiana law a plaintiff asserting a negligence claim must prove the following elements:

---

[60] *Id.*

[61] *Id.*

[62] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[63] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

(1) the defendant's conduct was cause in fact of the plaintiff's injuries;
(2) the defendant had a duty to conform conduct to a specific standard;
(3) the defendant breached that duty;
(4) the defendant's conduct was the legal cause of plaintiff's injuries; and
(5) plaintiff sustained actual damages.[64]

Here, the parties primarily dispute what duties LOCAP had to Plaintiffs and whether LOCAP breached said duties. The Amended Complaint cites Tariff 12.28.0, at Item No. 15, as the source of LOCAP's alleged duty, which is titled "Specification As To Quality Received." Item No. 15 states:

> Good merchantable petroleum of the gravity of twenty degrees (20°) API (American Petroleum Institute) or higher which is properly settled and contains *not more than two percent (2%) of basic sediment, water, and other impurities*, and has a temperature not in excess of one hundred twenty degrees (120°) Fahrenheit will be accepted for transportation. No petroleum will be accepted unless its gravity, viscosity, and other characteristics are such that it will be readily susceptible of transportation through the Carrier's existing facilities, and it will not materially affect the quality of other shipments or cause disadvantage to other shippers and/or the Carrier.[65]

Tariff 12.28.0, at Item No. 5, states, "'Carrier' as herein used means LOCAP LLC."[66] Further, Tariff 12.28.0, at Item No. 80, is titled "Duty of Carrier" and states, "The Carrier shall not be required to transport petroleum except with reasonable diligence, considering the quantity of petroleum, the distance of transportation, the safety of operation, and other material factors."[67] The

---

[64] *Fruge v. ONOB, Inc.*, 09-1028 (La. App. 3 Cir. 3/10/10), 32 So.3d 1115, 1118.

[65] Rec. Doc. 77-2 at 3 (emphasis added).

[66] *Id.*

[67] *Id.* at 5.

11

Federal Powers Act created FERC, which was granted broad regulatory power.[68] Further, FERC Tariffs, such as the one at issue, have the force of federal law.[69]

LOCAP argues that Item No. 80 lays out the extent of its duty under this tariff. However, LOCAP cites no authority to support its assertion that this Court should give effect to one item of the tariff while disregarding another item. Item No. 80 clearly explains when LOCAP is "not required to transport petroleum[,]" but Item No. 15 on its face expressly states the specifications petroleum must meet in order it to be "accepted for transportation" by LOCAP.[70] Therefore, this Court finds that Tariff 12.28.0 in its entirety provides the standard of care that LOCAP was mandated to operate under when transporting petroleum. That includes, not accepting (i.e. rejecting) petroleum shipments that contain "more than two percent (2%) . . . impurities[.]"[71]

As to the breach of said duty, Plaintiffs assert that the allegedly contaminated crude oil, which was transported through the LOCAP pipeline, contained elevated levels of zinc which indicates the presence of impure substances such as zinc bromide.[72] Therefore, Plaintiffs appear to be alleging that the crude oil at issue was contaminated with more than 2% impurities, with zinc at levels of 9.3 to 14.2 parts per million merely indicating the presence of larger impure compounds.[73] Thus, while LOCAP is free to challenge the alleged levels of impurities in the crude oil at trial or on summary judgment after discovery has been exchanged,  Plaintiffs have met their

---

[68] *See Gulf States Utilities Co. v. Fed. Power Comm'n*, 411 U.S. 747, 758 (1973) (citing 16 U.S.C. § 824d).

[69] *See Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, LLC*, No. CV 14-405-JWD-RLB, 2020 WL 798082, at *22 (M.D. La. Feb. 18, 2020) (citing *Carter v. Am. Tel. & Tel. Co.*, 365 F.2d 486, 496 (5th Cir. 1966)).

[70] Rec. Doc. 77-2 at 3, 5.

[71] *Id.* at 3.

[72] Rec. Doc. 65 at 10.

[73] *Id.*

burden of alleging a plausible breach of the standard of care LOCAP is required to adhere to under Tariff 12.28.0. LOCAP does not raise any argument to dispute Plaintiffs' allegations that they suffered damages or that the contaminated crude oil was the cause in fact and legal cause of said damages. Hence, the Court finds that Plaintiffs' have stated a plausible claim of negligence against LOCAP.

## V. Conclusion

The Court finds that LOCAP had a duty under Tariff 12.28.0 to reject petroleum which contained more than 2% impurities from transportation within its pipeline. Plaintiffs have plausibly alleged that LOCAP breached this standard of care, which was allegedly the legal and factual cause of Plaintiffs' damages. Thus, the Court denies the instant motion.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss[74] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this  21st  day of July, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[74] Rec. Doc. 77.