**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**EXXONMOBIL OIL CORPORATION, ET AL.**          **CIVIL ACTION**

**VERSUS**                                       **CASE NO. 25-2001**

**MARS OIL PIPELINE COMPANY, LLC, ET AL.**       **SECTION: "G"(2)**

## ORDER AND REASONS

Before the Court is Defendants Amberjack Pipeline Company, LLC ("APC"), Mars Oil Pipeline Company, LLC ("Mars"), and Shell Pipeline Company, LP's ("SPC") (collectively, "Movants") Motion to Dismiss.[1] In this litigation, Plaintiffs ExxonMobil Oil Corporation ("EMOC") and Exxon Mobil Corporation ("EMC") (collectively, "Plaintiffs") bring claims against Defendants Mars, Chevron U.S.A., Inc. ("Chevron"), TotalEnergies E&P USA, Inc. ("TotalEnergies"), LOOP, LLC ("LOOP"), APC, SPC, LOCAP, LLC ("LOCAP"), Halliburton Energy Services, Inc. ("HES"), Wood Group USA, Inc. ("Wood"), and OneSubsea, LLC ("SubSea") (collectively, "Defendants"), to recover damages for allegedly contaminated crude oil[2] that it purchased and/or received from Defendants.[3] Movants move the Court to dismiss the claims against them, asserting that Plaintiffs fail to state a plausible claim for relief.[4] Plaintiffs oppose the

---

[1] Rec. Doc. 81.

[2] The terms "crude oil" and "petroleum" are used interchangeably in the parties' briefings and in this Order and Reasons.

[3] Rec. Doc. 65.

[4] Rec. Doc. 81.

1

motion.[5] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

### I. Background

In the Amended Complaint, Plaintiffs allege that crude oil purchased by EMOC and transported to EMC's Baton Rouge Refinery had low pH levels and was contaminated with zinc, which was mixed with previously non-contaminated crude oil owned by EMOC, thereby "physically damaging" EMOC's non-contaminated crude oil and causing "upset conditions" at the Baton Rouge Refinery.[6] Plaintiffs allege that the crude oil was produced by the Anchor Project[7] and passed through a network of pipelines whereby it was delivered to EMC's Baton Rouge Refinery.[8]

Plaintiffs detail each Defendant's alleged involvement in the Anchor Project and the pipeline network that transported the allegedly contaminated crude oil as follows: the Anchor Project is a joint venture between Chevron and TotalEnergies, with each company holding a working interest in the project; HES performed the well completion for the Anchor Project; SubSea developed certain key subsea components of the Anchor Project; Wood provided the design for the Anchor Project; Mars owns the Mars Pipeline System; SPC is the controlling parent company and operator of Mars; LOOP operates the LOCAP Pipeline System and owns the LOOP Pipeline System, consisting of a deepwater port, pipeline, and storage facility; APC owns the

---

[5] Rec. Doc. 88.

[6] Rec. Doc. 65 at 9.

[7] The Anchor Project is an offshore oil well facility located approximately 140 miles from the Louisiana Coast on the U.S. Outer Continental Shelf. Rec. Doc. 65 at 6.

[8] Rec. Doc. 65 at 9–10.

Amberjack Pipeline System; and LOCAP owns the LOCAP Pipeline.[9] Plaintiffs allege that the contaminated crude oil was transported along the following pathway: from the Anchor Project, to the Amberjack Pipeline System, to the Mars Pipeline System, to the LOOP Pipeline System and storage facility, to the LOCAP Pipeline System, then finally to EMC's Baton Rouge refinery.[10]

After discovery of the contaminated oil, Plaintiffs allege that EMOC took samples of earlier batches of crude oil retained from the LOCAP and Mars Pipelines from June 2025, which allegedly "showed fluctuating levels of zinc."[11] Further, Plaintiffs aver that zinc does not typically occur naturally in produced crude oil, thus the elevated levels of zinc indicated the presence of impure substances.[12] Moreover, Plaintiffs claim that the network of pipelines connected to the Anchor Project operate under rate tariffs approved by the Federal Energy Regulatory Commission ("FERC") and the Louisiana Public Service Commission ("LPSC").[13] Thus, due to the contamination of the crude oil received by Plaintiffs and the alleged failure of Defendants to comply with the relevant FERC and LPSC tariffs governing the pipeline network, Plaintiffs bring various claims against Defendants including: breach of the warranty against redhibitory defects claims against TotalEnergies and Chevron; Louisiana Products Liability Act claims against LOOP, TotalEnergies, and Chevron; negligence claims against Chevron, TotalEnergies, Mars, LOOP, APC, LOCAP, SPC, HES, SubSea, and Wood; and a breach of contract claim against LOOP.[14]

---

[9] *Id.* at 3–5, 10.

[10] *Id.* at 3, 7–8.

[11] *Id.* at 10.

[12] *Id.*

[13] *Id.* at 7.

[14] *Id.* at 16–32.

On September 25, 2025, Plaintiffs filed a Complaint in this Court.[15] On February 25, 2026, Plaintiffs filed an Amended Complaint.[16] On that same day, Movants filed the instant Motion to Dismiss.[17] On March 23, 2026, Plaintiffs filed an opposition.[18] On March 30, 2026, Movants filed a reply brief.[19] On July 15, 2026, the Court heard oral arguments on the motion.

## II. Parties' Arguments

### A.    *Movants' Arguments in Support of the Motion*

Movants assert that Plaintiffs "fail to cite any authority or basis whatsoever to support the proposition that the Movants had an affirmative duty to inspect or analyze the petroleum product produced at Chevron U.S.A.'s well and sold by Chevron U.S.A. to EMOC."[20] Movants contend that they "do not have a duty to reject crude oil that is contaminated, they simply 'reserve the right to reject' should they become aware that the oil is contaminated."[21] Specifically, Movants point to Section 25 of the Mars and Amberjack tariffs which allegedly states that the "[c]arrier is not responsible for monitoring receipts or deliveries for contaminants[,]" as explicit evidence that this duty was not owed to Plaintiffs.[22] Moreover, Movants submit that Section 45 of the Mars and Amberjack tariffs lays out the sole duty of the carriers which states, "[c]arrier shall transport Petroleum with reasonable diligence, considering the quality of the Petroleum, the distance of

---

[15] Rec. Doc. 1.

[16] Rec. Doc. 65.

[17] Rec. Doc. 81.

[18] Rec. Doc. 88.

[19] Rec. Doc. 92.

[20] Rec. Doc. 81-1 at 1–2.

[21] *Id.* at 11.

[22] *Id.* (quoting Non-Jurisdictional Tariff 13.12.0).

transportation, the safety of operation, and other material elements."[23] Accordingly, Movants argue that Plaintiffs have failed to plausibly allege that Movants owed them a duty to reject the contaminated crude oil, thus the Court should dismiss the negligence claims against them.[24]

### B.        *Plaintiffs' Arguments in Opposition to the Motion*

In opposition, Plaintiffs assert that the Amended Complaint alleges that Movants duty and breach is based on Movants accepting crude oil that was "out-of-specification based on general industry accepted practice[,]" in addition to the crude oil not complying with tariff requirements.[25] Regarding the tariffs, Plaintiffs point out that they informed "SPC, the controlling parent company of Mars" of the zinc contamination on June 26, 2025, but that SPC did nothing to mitigate the flow of the contaminated crude oil for weeks, even after being informed by Plaintiffs of the problem.[26] Moreover, Plaintiffs dispute Movants' assertion that they merely had the right to reject out-of-specification shipments, instead insisting that Movants had assumed a duty to do so pursuant to the tariffs' requirement to operate the pipelines with "reasonable diligence."[27]

 Further, Plaintiffs aver that Movants' status as custodians of the oil being shipped through their pipelines gives rise to a legal duty under Louisiana law.[28] Accordingly, Plaintiffs contend that they have adequately pled that Movants had a duty to Plaintiffs, and other downstream purchasers

---

[23] *Id.*

[24] *Id.* at 13.

[25] Rec. Doc. 88 at 3.

[26] *Id.* at 5.

[27] *Id.* at 7–9.

[28] *Id.* at 11 (citing *St. Julien v. Landry*, 12-100 (La. App. 3 Cir. 6/20/12), 94 So. 3d 976, 982).

and recipients of the crude oil shipped on their pipelines, and that Movants' breach of this duty was the cause of Plaintiffs damages.[29]

### C.   Movants' Arguments in Further Support of the Motion

In reply, Movants reassert that the "reservation of rights within the tariffs clearly connotes discretion and not a requirement on behalf of the carriers."[30] Thus, Movants insist that a "plain reading of the tariffs confirms that Movants did not owe a duty to Plaintiffs to monitor the crude oil that it was carrying from the shipper to Plaintiffs' facility."[31] Moreover, Movants submit that Plaintiffs mitigation argument is being asserted for the first time in their opposition and should not be considered by the Court.[32] Further, Movants contend that even if the Court does consider the mitigation argument, Plaintiffs have cited no authority to support the imposition of a duty on Movants to mitigate the flow of crude oil.[33] Additionally, Movants aver that Section 25 of Tariff 13.12.0 imposes liability for contaminated oil on the shippers (Chevron and/or TotalEnergies), not the carriers (Movants).[34] Hence, Movants contend that Plaintiffs have not stated plausible negligence claims against them and that the Court should dismiss these claims with prejudice.[35]

---

[29] *Id.* at 4.

[30] Rec. Doc. 92 at 2.

[31] *Id.*

[32] *Id.* at 3.

[33] *Id.* at 4.

[34] *Id.* at 5.

[35] *Id.* at 6.

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[36] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[37] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[38] "Factual allegations must be enough to raise a right to relief above the speculative level."[39] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[40]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[41] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[42] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[43] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[44] The complaint need not contain detailed factual allegations, but it

---

[36] Fed. R. Civ. P. 12(b)(6).

[37] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[39] *Twombly*, 550 U.S. at 555.

[40] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[41] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[42] *Iqbal*, 556 U.S. at 678–79.

[43] *Id.* at 679.

[44] *Id.* at 678.

must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[45] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[46] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[47] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[48]

### IV. Analysis

Movants move the Court to dismiss the negligence claims against them, asserting that the Amended Complaint fails to plausibly allege a duty owed to Plaintiffs. Plaintiffs contend that pursuant to the relevant tariffs, Movants had a duty to operate the pipelines with reasonable diligence, including not shipping contaminated crude oil downstream and especially to refrain from doing so after Movants were informed of the contamination by Plaintiffs.

Under Louisiana law a plaintiff asserting a negligence claim must prove the following elements:

> (1) the defendant's conduct was cause in fact of the plaintiff's injuries;
> (2) the defendant had a duty to conform conduct to a specific standard;
> (3) the defendant breached that duty;
> (4) the defendant's conduct was the legal cause of plaintiff's injuries; and
> (5) plaintiff sustained actual damages.[49]

---

[45] *Id.*

[46] *Id.*

[47] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[48] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[49] *Fruge v. ONOB, Inc.*, 09-1028 (La. App. 3 Cir. 3/10/10), 32 So. 3d 1115, 1118.

Further, "[u]nder Louisiana law, the existence of a duty presents a question of law that 'varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved.'"[50]

The parties' chief dispute is whether the element of duty has been adequately pled in the Amended Complaint. The Amended Complaint alleges that:

> [t]he negligent failure of [Movants] to reject the low pH and contaminated shipments of crude oil resulted in this low pH and contaminated crude oil becoming mixed with EMOC's otherwise in-specification and noncontaminated crude oil, causing physical and economic damage. As such, the negligent failure of [Movants] to reject the low pH and zinc contaminated shipments of crude oil is a cause-in-fact and legal cause of the damages suffered by EMOC.[51]

Further, the Amended Complaint asserts that Movants "additionally and/or alternatively . . . had a general duty to conform their standard of conduct in their operations to the standard of conduct of a reasonable person."[52]

Looking first to the tariffs cited by Plaintiffs, they allege that LSPC Tariff 11.4.0, which allegedly governs transportation of petroleum on the Mars Pipeline System, states that Mars reserves the right to reject crude oil:

> "containing water, sediment and other impurities in excess of one percent" and/or crude oil "that has been contaminated by the existence of and/or excess amount of impure substances, including but not limited to . . . arsenic, lead, and/or other metals which cause harm to other Shippers, connecting carriers, users of the contaminated [crude oil] or Carrier."[53]

---

[50] *Burszitajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) (quoting *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994)).

[51] Rec. Doc. 65 at 30.

[52] *Id.*

[53] *Id.* at 27–28.

Further, the Amended Complaint alleges that Non-Jurisdictional Tariff 13.12.0, which governs the Amberjack Pipeline System, contains identical language.[54] However, Section 25 of Tariff 13.12.0 also states that the "[c]arrier is not responsible for monitoring receipts or deliveries for contaminants."[55]

The language of this clause from Section 25 of Tariff 13.12.0 clearly expresses the intent that Amberjack does not have a duty to monitor the crude oil it receives for contaminants. Neither party has provided the Court with the full document of LSPC Tariff 11.4.0. Therefore, the Court is unable to determine if there is a similar clause that applies to Mars. However, to the extent that this clause applies to any of the Movants, it does not provide a definitive release of liability. At most, this clause provides that Movants did not have a duty to monitor the crude oil for contaminants but is silent as to whether they had a duty of reasonable care or what that duty would entail.

Moreover, Movants assert that another clause in Section 25 of Tariff 13.12.0 shields them from liability, that states:

> Carrier may accept Petroleum from Shipper that does not meet the above conditions due to, but not limited to, operational circumstances [. . . ]. In such case, however, Shipper must notify Carrier fully, in writing, of the characteristics of such Petroleum and Shipper shall then secure from the producer or connecting carrier or shall provide itself in writing, to Carrier an assumption of all liability and agree to hold Carrier harmless from and against any loss, cost, or disadvantage to other Shippers, and other pipelines or downstream facilities, or to Carrier arising from such transportation.[56]

---

[54] *Id.* at 28.

[55] Rec. Doc. 81-2 at 4. Here, the Court considers the full language of the tariffs because, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[56] Rec. Doc. 81-2 at 4.

However, this clause merely requires shippers (Chevron and/or TotalEnergies) to indemnify carriers (Movants) under certain circumstances for damages caused by out-of-specification petroleum provided from the shippers to the carriers. It does not shield Movants from suits, instead only providing a potential crossclaim for indemnification against the shippers.

The Amended Complaint asserts that all Movants had a "general duty to conform their standard of conduct in their operations to the standard of conduct of a reasonable person[,]" and that the contaminated crude oil "contained impurities well above industry accepted concentrations."[57] Movants argue that the alleged duty of reasonable care should not extend to a duty to mitigate damages because the mitigation theory is discussed for the first time in Plaintiffs' opposition to the instant motion. However, the Amended Complaint alleges in detail that Movants breached their duty of reasonable care by allowing the contaminated crude oil to flow downstream from their section of pipeline. The fact that Plaintiffs further delineate this theory of negligence in their opposition does not amount to an entirely new theory. Plaintiffs simply appear to note Movants' alleged failure to mitigate as additional factual support of their alleged failure to provide reasonable care.

The Fifth Circuit has held that "[i]ndustry standards are relevant to determining the existence of a duty."[58] "Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence."[59] "Compliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the

---

[57] Rec. Doc. 65 at 29–30.

[58] *Dunn v. Bd. of Commissioners of Port of New Orleans*, 2025-0201 (La. App. 4 Cir. 12/3/25), 430 So. 3d 438, 442 (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180–81 (5th Cir. 1975)).

[59] *Muncie Aviation Corp*, 519 F.2d at 1180.

factors the trier of fact may consider in applying the standard of care."[60] Here, the Amended Complaint alleges that Movants breached their duty of reasonable care by not rejecting crude oil that was contaminated in excess of industry standards. Hence, Plaintiffs have adequately pled that the Movants had a duty of reasonable care governed by industry standards, and that allowing contaminated crude oil to flow downstream from their pipelines was a breach of that duty. Therefore, the Court finds that Plaintiffs have met their burden of alleging plausible negligence claims against Movants.

## V. Conclusion

For the reasons explained above, the Court finds the Plaintiffs have alleged plausible negligence claims against Movants. Thus, the Court denies the instant motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Movants' Motion to Dismiss[61] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this __21st__ day of July, 2026.

_____
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[60] *Id.* at 1180–81.

[61] Rec. Doc. 81.