**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EXXONMOBIL OIL CORPORATION, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 25-2001** |
| **MARS OIL PIPELINE COMPANY, LLC, ET AL.** | **SECTION: "G"(2)** |

**ORDER AND REASONS**

Before the Court is Defendant Wood Group USA, Inc.'s ("Wood") Motion to Dismiss.[1] In this litigation, Plaintiffs ExxonMobil Oil Corporation ("EMOC") and Exxon Mobil Corporation ("EMC") (collectively, "Plaintiffs") bring claims against Defendants Mars Oil Pipeline Company, LLC ("Mars"), Chevron U.S.A., Inc. ("Chevron"), TotalEnergies E&P USA, Inc. ("TotalEnergies"), LOOP, LLC ("LOOP"), Amberjack Pipeline Company, LLC ("APC"), Shell Pipeline Company, LP ("SPC"), LOCAP, LLC ("LOCAP"), Halliburton Energy Services, Inc. ("HES"), Wood, and OneSubsea, LLC ("SubSea") (collectively, "Defendants"), to recover damages for allegedly contaminated crude oil[2] that it purchased and/or received from Defendants.[3] Wood moves the Court to dismiss the claims against it, asserting that Plaintiffs fail to state a plausible claim for relief.[4] Plaintiffs oppose the motion.[5] Having considered the motion, the

---

[1] Rec. Doc. 96.

[2] The terms "crude oil" and "petroleum" are used interchangeably in the parties' briefings and in this Order and Reasons.

[3] Rec. Doc. 65.

[4] Rec. Doc. 96.

[5] Rec. Doc. 104.

memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

In the Amended Complaint, Plaintiffs allege that crude oil purchased by EMOC and transported to EMC's Baton Rouge Refinery had low pH levels and was contaminated with zinc, which was mixed with previously non-contaminated crude oil owned by EMOC, thereby "physically damaging" EMOC's non-contaminated crude oil and causing "upset conditions" at the Baton Rouge Refinery.[6] Plaintiffs allege that the crude oil was produced by the Anchor Project[7] and passed through a network of pipelines whereby it was delivered to EMC's Baton Rouge Refinery.[8]

Plaintiffs detail each Defendant's alleged involvement in the Anchor Project and the pipeline network that transported the allegedly contaminated crude oil as follows: the Anchor Project is a joint venture between Chevron and TotalEnergies, with each company holding a working interest in the project; HES performed well completion services for the Anchor Project; SubSea developed certain key subsea components of the Anchor Project; Wood provided the design for the Anchor Project; Mars owns the Mars Pipeline System; SPC is the controlling parent company and operator of Mars; LOOP operates the LOCAP Pipeline System and owns the LOOP Pipeline System, consisting of a deepwater port, pipeline, and storage facility; APC owns the Amberjack Pipeline System; and LOCAP owns the LOCAP Pipeline System.[9] Plaintiffs allege that

---

[6] Rec. Doc. 65 at 9.

[7] The Anchor Project is an offshore oil well facility located approximately 140 miles from the Louisiana Coast on the U.S. Outer Continental Shelf. Rec. Doc. 65 at 6.

[8] Rec. Doc. 65 at 9–10.

[9] *Id.* at 3–5, 10.

the contaminated crude oil was transported along the following pathway: from the Anchor Project, to the Amberjack Pipeline System, to the Mars Pipeline System, to the LOOP Pipeline System and storage facility, to the LOCAP Pipeline System, then finally to EMC's Baton Rouge refinery.[10]

After discovery of the contaminated oil, Plaintiffs allege that EMOC took samples of earlier batches of crude oil retained from the LOCAP and Mars Pipelines from June 2025, which allegedly "showed fluctuating levels of zinc."[11] Further, Plaintiffs aver that zinc does not typically occur naturally in produced crude oil, thus the elevated levels of zinc indicated the presence of impure substances.[12] Moreover, Plaintiffs claim that the network of pipelines connected to the Anchor Project operate under rate tariffs approved by the Federal Energy Regulatory Commission ("FERC") and the Louisiana Public Service Commission ("LPSC").[13] Thus, due to the contamination of the crude oil received by Plaintiffs and the alleged failure of Defendants to comply with the relevant FERC and LPSC tariffs governing the pipeline network, Plaintiffs bring various claims against Defendants including: breach of the warranty against redhibitory defects claims against TotalEnergies and Chevron; Louisiana Products Liability Act claims against LOOP, TotalEnergies, and Chevron; negligence claims against Chevron, TotalEnergies, Mars, LOOP, APC, LOCAP, SPC, HES, SubSea, and Wood; and a breach of contract claim against LOOP.[14]

---

[10] *Id.* at 3, 7–8.

[11] *Id.* at 10.

[12] *Id.*

[13] *Id.* at 7.

[14] *Id.* at 16–32.

On September 25, 2025, Plaintiffs filed a Complaint in this Court for damages.[15] On February 25, 2026, Plaintiffs filed an Amended Complaint.[16] On April 2, 2026, Wood filed the instant Motion to Dismiss.[17] On April 21, 2026, Plaintiffs filed an opposition.[18] On April 27, 2026, Wood filed a reply brief.[19] On July 15, 2026, the Court heard oral arguments on the motion.

## II. Parties' Arguments

### A.    Wood's Arguments in Support of the Motion

Wood argues that Plaintiffs fail to state a claim for negligence.[20] While Wood concedes that "a tortfeasor may be liable under 2315 for any damage remotely caused by his or her fault,"[21] Wood asserts that "[t]he scope of protection inquiry asks whether the enunciated rule or principle of law extends to or is intended to protect *this plaintiff* from *this type of harm* arising in *this manner*."[22] Wood asserts that Plaintiffs' allegation that Wood owed a "duty to exercise reasonable care to ensure that the performance of their work did not cause damages to the other users of the common carrier network and downstream recipients of crude oil from this network, including EMOC and EMC[,]" is outside the scope of damages for which a "design professional" is liable.[23] Therefore, Wood avers that it "owed no duty in connection with its design work to protect Plaintiffs

---

[15] Rec. Doc. 1.

[16] Rec. Doc. 65.

[17] Rec. Doc. 96.

[18] Rec. Doc. 104.

[19] Rec. Doc. 107.

[20] Rec. Doc. 96.

[21] Rec. Doc. 96-1 at 4 (quoting *Bd. of Comm'rs of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co.*, 88 F. Supp. 3d 615, 630 (E.D. La. 2015)).

[22] *Id.* at 5 (quoting *Roberts v. Benoit*, 605 So. 2d 1032, 1044-45 (La. 1991) (quotation omitted, emphasis in original)).

[23] *Id.* (citing Rec. Doc. 65 at 31).

from" the damage allegedly caused by the contaminated crude oil.[24] In fact, Wood asserts that even if it "owed a general duty to perform its design work reasonably, that duty would not extend to far-away purchasers and processors of crude oil, like Plaintiffs here."[25] Further, Wood asserts that Plaintiffs do not plead specific conduct by Wood that caused Plaintiffs damages, and the First Amended Complaint merely contains "conclusory allegations and unwarranted deductions of fact."[26] Moreover, "[b]ecause Plaintiffs point to no defect in design of the Anchor Project as a cause of their damages," Wood asserts "it is facially implausible" that Wood caused Plaintiffs' alleged damages.[27]

**B.      *Plaintiffs' Arguments in Opposition to the Motion***

Plaintiffs assert that they have adequately alleged a claim for negligence against Wood.[28] Plaintiffs assert that they "have plausibly alleged that [Wood] had a duty to exercise reasonable care to ensure that the performance of their work on the Anchor Project did not cause damage to Plaintiffs and other users of the common carrier network, and downstream recipients of crude oil from this network."[29] Further, Plaintiffs aver "it was readily foreseeable" that Wood's design work "could result in injury to the Plaintiffs and other users of the carrier network and downstream recipients of crude oil from the network."[30]

---

[24] *Id.* at 6.

[25] *Id.*

[26] *Id.* at 7, 9 (citing *Thornton v. Lymous*, 850 Fed. App'x 320, 322 n. 10 (5th Cir. 2021)).

[27] *Id.* at 7.

[28] Rec. Doc. 104.

[29] *Id.* at 4.

[30] *Id.* at 6.

Plaintiffs assert that they have sufficiently alleged that: (1) Wood was a contractor on the Anchor Project; (2) in its role as a contractor on the Anchor Project, Wood provided the fully integrated design for the Anchor Project, including topsides and subsea systems incorporating risers, production flowlines, export pipelines and flow assurance analysis; (3) Wood had a duty to exercise reasonable care to ensure that the performance of its work did not cause damage to the other users of the common carrier network and downstream recipients of crude oil from the network, including Plaintiffs; (4) Wood breached this duty through its negligent work on the Anchor Project, including possibly introducing "zinc contaminated completion fluids" to the pipeline network, failing to "procure an isolation strategy for acids" used in the well completion, and/or permitting the introduction of "zinc-based scavengers" into the pipeline network; and (5) Wood's negligence resulted in Plaintiffs suffering damages.[31] Therefore, Plaintiffs aver it is plausible that Wood, the party who designed the Anchor Project, "was negligent in its work and that this negligence was a cause of Plaintiffs' damages."[32]

Plaintiffs further assert they have sufficiently alleged the specific work that Wood was responsible for.[33] Additionally, Plaintiffs contend "there is nothing procedurally improper with [their] identification of multiple defendants as having committed negligent acts that resulted in their damages" because "Louisiana law specifically provides for the liability of joint tortfeasors."[34]

---

[31] *Id.* at 4–5, 11.

[32] *Id.* at 12.

[33] *Id.*

[34] *Id.* at 13.

*C.*        ***Wood's Arguments in Further Support of the Motion***

In reply, Wood reasserts that as a design professional, it does not possess "an all-encompassing duty to protect everyone from every risk."[35] Further, Wood avers that its design work is "too attenuated to impose a duty on [Wood] to protect Plaintiffs from harm," as Plaintiffs' "damages arise from a pipeline network that [Wood] did not design and their use of which is 'downstream' from the interaction of what [Wood] designed with that Pipeline Network."[36] Wood also reasserts that Plaintiffs' allegations against them are implausible because "the Amended Complaint fails to make any factual allegation tying [Wood's] design work to the harm that Plaintiffs allegedly suffered."[37] Additionally, Wood contends that Plaintiffs fail to make an allegation of conduct that is unique to Wood.[38]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[39] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[40] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[41] "Factual allegations must be enough to raise a right to relief above the

---

[35] Rec. Doc. 107 at 1 (quoting *Bonilla v. Verges Rome Architects*, 2023-938 (La. 3/22/24), 382 So. 3d 62, 68).

[36] *Id.* at 2.

[37] *Id.* at 4.

[38] *Id.*

[39] Fed. R. Civ. P. 12(b)(6).

[40] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

speculative level."[42] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[43]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[44] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[45] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[46] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[47] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[48] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[49] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[50] If factual allegations are insufficient to raise a right to relief above the

---

[42] *Twombly*, 550 U.S. at 555.

[43] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[44] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[45] *Iqbal*, 556 U.S. at 678–79.

[46] *Id.* at 679.

[47] *Id.* at 678.

[48] *Id.*

[49] *Id.*

[50] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[51]

## IV. Analysis

Wood moves the Court to dismiss the negligence claims against it, asserting that the Amended Complaint fails to plausibly allege a duty owed to Plaintiffs, a breach of said duty, or if a duty was owed that Wood's alleged negligence was the legal cause of Plaintiffs' damages. Plaintiffs contend that pursuant to Louisiana state law, Wood had a duty to perform its "design professional" obligations with reasonable care, including ensuring the performance of its work did not cause damage to other users of the common carrier network and downstream recipients of crude oil from the Anchor Project.[52] Plaintiffs allege that Wood's negligent performance of its design work resulted in damages to Plaintiffs' crude oil and Baton Rouge facility.[53]

Under Louisiana law a plaintiff asserting a negligence claim must prove the following elements:

> (1) the defendant's conduct was cause in fact of the plaintiff's injuries;
> (2) the defendant had a duty to conform conduct to a specific standard;
> (3) the defendant breached that duty;
> (4) the defendant's conduct was the legal cause of plaintiff's injuries; and
> (5) plaintiff sustained actual damages.[54]

Further, "[u]nder Louisiana law, the existence of a duty presents a question of law that 'varies depending on the facts, circumstances, and context of each case and is limited by the particular

---

[51] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[52] Rec. Doc. 104 at 5–6.

[53] *Id.* at 10.

[54] *Fruge v. ONOB, Inc.*, 09-1028 (La. App. 3 Cir. 3/10/10), 32 So. 3d 1115, 1118.

risk, harm, and plaintiff involved.'"[55] "[W]hether the defendant has breached a duty owed is a question of fact[.]"[56]

The parties' chief disputes are whether the elements of duty, breach, and legal causation have been adequately pled in the Amended Complaint. The Amended Complaint alleges that Wood was a contractor on the Anchor Project and "had the duty to exercise reasonable care to ensure that the performance of [its] work did not cause damage to the other users of the common carrier network and downstream recipients of crude oil from this network, including EMOC and EMC."[57] The Amended Complaint further asserts that Wood breached this duty by:

> allowing or causing, through [its] negligent work on the Anchor Project, the introduction of zinc contaminated completion fluid, or some other contaminant containing zinc, into the crude oil which was then introduced into the U.S. Gulf Coast pipeline network. . . . permitting or causing the introduction of zinc-based scavengers into the crude oil which was then introduced into the U.S. Gulf Coast pipeline network. . . [which] caused the crude oil originating from the Anchor Project to be out of specification owing to its low pH and contamination with zinc, [which] became mixed with EMOC's otherwise non-contaminated crude oil and was run through EMC's Baton Rouge refinery.[58]

Further, the Amended Complaint asserts "the negligent introduction of this contamination into the crude oil by [Wood] is a cause in fact and legal cause of the damages suffered by Plaintiffs because of said contamination."[59] It is inappropriate for the Court to address the parties' factual dispute regarding the occurrence of a breach on a motion to dismiss. Accordingly, because the Amended

---

[55] *Burszitajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) (quoting *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994)).

[56] *Donaldson v. Sanders*, 94-1366 (La. App. 3 Cir. 7/19/95), 661 So. 2d 1010. 1014 (citing *Mundy v. Dept. of Health & Human Res.*, 620 So. 2d 811 (La. 1993)).

[57] Rec. Doc. 65 at 31.

[58] *Id.* at 31–32.

[59] *Id.* at 32.

Complaint alleges that Wood breached a duty owed, the Court finds that it adequately alleges the element of breach for the negligence claim.

Looking to whether Wood owed a duty of care, the Amended Complaint cites to Louisiana law, which holds that "a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations."[60] Wood argues that its design work on the Anchor Project falls outside the scope of any protection it could reasonably owe Plaintiffs.[61] However, the contractor-to-third party duty invoked by Plaintiffs against Wood is clearly intended to apply to the alleged circumstances—a contractor whose alleged negligence is being asserted as a contributing cause of a third party's damages.[62]

Wood argues that Plaintiffs fail to allege a sufficiently specific duty owed by the Wood.[63] In asserting that Plaintiffs have alleged only a "duty to exercise reasonable care," Wood argues that the Amended Complaint is "facially implausible."[64] However, Plaintiffs aver in the pleadings that the low pH and zinc or zinc-like substance contamination caused their crude oil to be out-of-specification.[65] Further, the Amended Complaint asserts that the zinc contamination, and likely resulting low pH, of the crude oil is attributable to Wood's negligence in its contracted design work related to the Anchor Project.[66] Moreover, the Amended Complaint alleges that the zinc

---

[60] Rec. Doc. 104 at 4 (citing *Cormier v. Honiron Corp.*, 00-446 (La. App. 3 Cir. 9/27/00), 771 So. 2d 193, 197).

[61] Rec. Doc. 107 at 2.

[62] *Cormier*, 771 So. 2d at 197.

[63] Rec. Doc. 96-1 at 7.

[64] *Id.*

[65] Rec. Doc. 65 at 13.

[66] *Id.* at 31–32.

11

levels revealed by testing were "well in excess of the general industry standard."[67] The Fifth Circuit has held that "[i]ndustry standards are relevant to determining the existence of a duty."[68] "Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence."[69] "Compliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care."[70] Thus, taken as a whole the Amended Complaint alleges a sufficiently specific duty owed by Wood—reasonable care or adherence to industry standards— and that Wood breached that duty by negligently designed the Anchor Project in such a way that allowed the crude oil to be contaminated with zinc-based substances in excess of said industry standards.[71]

Turning to legal causation, Plaintiffs assert that "Courts have readily found that design professionals owe a duty to third persons when it is foreseeable that those third persons would be injured by the design professionals negligence"[72] The Amended Complaint alleges that: the crude oil contamination likely occurred during the completion phase of the wells at the Anchor Project which Wood allegedly designed; said contamination likely contributed to subsequent deficiencies in the crude oil; and those deficiencies led to physical, economic, and pecuniary damages.[73] Wood argues that even if it did owe a duty to Plaintiffs, its alleged conduct cannot fall within the scope

---

[67] *Id.* at 10.

[68] *Dunn v. Bd. of Commissioners of Port of New Orleans*, 2025-0201 (La. App. 4 Cir. 12/3/25), 430 So. 3d 438, 442 (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180–81 (5th Cir. 1975)).

[69] *Muncie Aviation Corp*, 519 F.2d at 1180.

[70] *Id.* at 1180–81.

[71] Rec. Doc. 65 at 13, 31–32.

[72] Rec. Doc. 104 at 6 (citing *Colbert v. B.F. Carvin Const. Co.*, 600 So. 2d 719, 725 (La. App. 5 Cir. 1992)).

[73] Rec. Doc. 65 at 6, 12, 16.

of that duty and that Plaintiffs' alleged damages are too attenuated from Wood's alleged negligence.[74] The alleged conduct and resulting damages certainly present a fact-sensitive case in which the "but for" causation inquiry must be carefully applied.[75] However, these factual inquiries cannot be decided on a motion to dismiss.

Wood further avers that the Amended Complaint fails to lodge a specific allegation of negligence against it, instead asserting an impermissible group claim against Wood, HES, and SubSea.[76] However, the Amended Complaint alleges that HES is liable for its well completion services, SubSea is liable for its development of "certain subsea components of the Anchor Project[,]" and Wood is liable for its design of the Anchor Project.[77] Accordingly, Plaintiffs have adequately pled facts that when taken as true allow the Court to infer that Wood's alleged conduct breached a duty of care owed to Plaintiffs and resulted in the crude oil contamination, which allegedly led to Plaintiffs' loss.[78] Hence, the Court finds that Plaintiffs have met their burden of alleging a plausible negligence claim against Wood.

## V. Conclusion

For the reasons explained above, the Court finds the Plaintiffs have alleged a plausible negligence claim against Woods. Thus, the Court denies the instant motion to dismiss.

Accordingly,

---

[74] Rec. Doc. 107 at 2.

[75] *Roberts v. Benoit*, 605 So. 2d 1032, 1045 (La. 1991).

[76] Rec. Doc. 96-1 at 7–8.

[77] Rec. Doc. 65 at 6, 31–32.

[78] *Id.* at 6, 12, 16.

13

**IT IS HEREBY ORDERED** that Wood's Motion to Dismiss[79] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this ___21st__ day of July, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[79] Rec. Doc. 96.