**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EXXONMOBIL OIL CORPORATION, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 25-2001** |
| **MARS OIL PIPELINE COMPANY, LLC, ET AL.** | **SECTION: "G"(2)** |

**ORDER AND REASONS**

Before the Court is Defendant Halliburton Energy Services, Inc.'s ("HES") Motion to Dismiss.[1] In this litigation, Plaintiffs ExxonMobil Oil Corporation ("EMOC") and Exxon Mobil Corporation ("EMC") (collectively, "Plaintiffs") bring claims against Defendants Mars Oil Pipeline Company, LLC ("Mars"), Chevron U.S.A., Inc. ("Chevron"), TotalEnergies E&P USA, Inc. ("TotalEnergies"), LOOP, LLC ("LOOP"), Amberjack Pipeline Company, LLC ("APC"), Shell Pipeline Company, LP ("SPC"), LOCAP, LLC ("LOCAP"), HES, Wood Group USA, Inc. ("Wood"), and OneSubsea, LLC ("SubSea") (collectively, "Defendants"), to recover damages for allegedly contaminated crude oil[2] that it purchased and/or received from Defendants.[3] HES moves the Court to dismiss the claims against it, asserting that Plaintiffs fail to state a plausible claim for relief.[4] Plaintiffs oppose the motion.[5] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 99.

[2] The terms "crude oil" and "petroleum" are used interchangeably in the parties' briefings and in this Order and Reasons.

[3] Rec. Doc. 65.

[4] Rec. Doc. 99.

[5] Rec. Doc. 105.

1

## I. Background

In the Amended Complaint, Plaintiffs allege that crude oil purchased by EMOC and transported to EMC's Baton Rouge Refinery had low pH levels and was contaminated with zinc, which was mixed with previously non-contaminated crude oil owned by EMOC, thereby "physically damaging" EMOC's non-contaminated crude oil and causing "upset conditions" at the Baton Rouge Refinery.[6] Plaintiffs allege that the crude oil was produced by the Anchor Project[7] and passed through a network of pipelines whereby it was delivered to EMC's Baton Rouge Refinery.[8]

Plaintiffs detail each Defendant's alleged involvement in the Anchor Project and the pipeline network that transported the allegedly contaminated crude oil as follows: the Anchor Project is a joint venture between Chevron and TotalEnergies, with each company holding a working interest in the project; HES performed well completion services for the Anchor Project; SubSea developed certain key subsea components of the Anchor Project; Wood provided the design for the Anchor Project; Mars owns the Mars Pipeline System; SPC is the controlling parent company and operator of Mars; LOOP operates the LOCAP Pipeline System and owns the LOOP Pipeline System, consisting of a deepwater port, pipeline, and storage facility; APC owns the Amberjack Pipeline System; and LOCAP owns the LOCAP Pipeline System.[9] Plaintiffs allege that the contaminated crude oil was transported along the following pathway: from the Anchor Project,

---

[6] Rec. Doc. 65 at 9.

[7] The Anchor Project is an offshore oil well facility located approximately 140 miles from the Louisiana Coast on the U.S. Outer Continental Shelf. Rec. Doc. 65 at 6.

[8] Rec. Doc. 65 at 9–10.

[9] *Id.* at 3–5, 10.

to the Amberjack Pipeline System, to the Mars Pipeline System, to the LOOP Pipeline System and storage facility, to the LOCAP Pipeline System, then finally to EMC's Baton Rouge refinery.[10]

After discovery of the contaminated oil, Plaintiffs allege that EMOC took samples of earlier batches of crude oil retained from the LOCAP and Mars Pipelines from June 2025, which allegedly "showed fluctuating levels of zinc."[11] Further, Plaintiffs aver that zinc does not typically occur naturally in produced crude oil, thus the elevated levels of zinc indicated the presence of impure substances.[12] Moreover, Plaintiffs claim that the network of pipelines connected to the Anchor Project operate under rate tariffs approved by the Federal Energy Regulatory Commission ("FERC") and the Louisiana Public Service Commission ("LPSC").[13] Thus, due to the contamination of the crude oil received by Plaintiffs and the alleged failure of Defendants to comply with the relevant FERC and LPSC tariffs governing the pipeline network, Plaintiffs bring various claims against Defendants including: breach of the warranty against redhibitory defects claims against TotalEnergies and Chevron; Louisiana Products Liability Act claims against LOOP, TotalEnergies, and Chevron; negligence claims against Chevron, TotalEnergies, Mars, LOOP, APC, LOCAP, SPC, HES, SubSea, and Wood; and a breach of contract claim against LOOP.[14]

On September 25, 2025, Plaintiffs filed a Complaint in this Court for damages.[15] On February 25, 2026, Plaintiffs filed an Amended Complaint.[16] On April 6, 2026, HES filed the

---

[10] *Id.* at 3, 7–8.

[11] *Id.* at 10.

[12] *Id.*

[13] *Id.* at 7.

[14] *Id.* at 16–32.

[15] Rec. Doc. 1.

[16] Rec. Doc. 65.

instant Motion to Dismiss.[17] On April 21, 2026, Plaintiffs filed an opposition.[18] On April 27, 2026, HES filed a reply brief.[19] On July 15, 2026, the Court heard oral arguments on the motion.

## II. Parties' Arguments

### A.   HES's Arguments in Support of the Motion

HES asserts that Plaintiffs fail to define what specific duty HES owed to Plaintiffs, much less how HES breached that standard of care.[20] Further, HES contends that Plaintiffs fail to allege how HES's "role in well completion services could be the legal cause of downstream harm or that the alleged harm would fit within the scope of any alleged duty."[21] Moreover, HES avers that Plaintiffs do not allege that the tariffs cited in the Amended Complaint impose any duty on HES.[22] Particularly, HES asserts that Plaintiffs do not specify what pH or zinc level is allowable for crude oil under these circumstances.[23]

HES also contends that even if Plaintiffs adequately pled a duty owed to them by HES, the negligence claim fails because Plaintiffs fail to allege that HES's alleged conduct was the legal cause of Plaintiffs' downstream harm.[24] Specifically, HES asserts that Plaintiffs fail "to adequately allege that [HES's] alleged conduct of supplying completion fluids to a well operator could be the legal cause of its alleged harm or fall within the scope of any duty purportedly owed by [HES] to

---

[17] Rec. Doc. 99.

[18] Rec. Doc. 105.

[19] Rec. Doc. 109.

[20] Rec. Doc. 99-1 at 4.

[21] *Id.*

[22] *Id.* at 5.

[23] *Id.* at 6.

[24] *Id.*

[Plaintiffs]."[25] Thus, HES contends that Plaintiffs' downstream damages "are too attenuated and distant from the alleged negligence" to sustain a negligence claim against it.[26] Further, HES avers that the alleged damages were not a foreseeable result of HES's "alleged conduct of supplying completion fluids to a well operator. . . ."[27] Therefore, HES argues, the Court should dismiss the negligence claim against it.[28]

## B.      *Plaintiffs' Arguments in Opposition to the Motion*

Plaintiffs assert that their cause of action against HES is for its negligence "in performing its well completion work on the Anchor Project, which resulted in and/or contributed to the contamination of crude oil from the Anchor Project, this low pH and contaminated crude oil entering the pipeline system and, ultimately, contaminating EMOC's crude oil and causing damage EMC's Baton Rouge Refinery."[29] Therefore, Plaintiffs contend that they have adequately alleged both HES's duty and breach.[30]

Specifically, Plaintiffs aver that the Amended Complaint alleges that the elevated levels of zinc shown in the crude oil samples that were tested indicate the presence of impure zinc-based substances such as zinc bromide, which is used in the completion phase of wells.[31] Moreover, Plaintiffs point out that the Amended Complaint alleges that if "zinc bromide entered the crude oil stream during well completion, it likely operated to lower the pH of the crude oil and triggered

---

[25] *Id.* at 7.

[26] *Id.* at 8 (quoting *In re Deepwater Horizon*, 500 Fed. App'x 355, 358 (5th Cir. 2012)).

[27] *Id.*

[28] *Id.* at 9.

[29] Rec. Doc. 105 at 3.

[30] *Id.*

[31] *Id.* at 4.

formation off hydrogen sulfide."[32] Plaintiffs submit that the Amended Complaint further alleges that "[i]n response, zinc-based scavengers were likely added to the crude oil to react with hydrogen sulfide[,]" and that "the addition of these zinc-based scavengers would have the effect of compounding the low-pH issue by increasing overall levels of zinc in the crude oil and thereby increasing the low pH (acidity) of the crude oil."[33]

Plaintiffs further aver that the Amended Complaint alleges that HES "had the duty to exercise reasonable care to ensure that the performance of [its] work did not cause damage to the other users of the common carrier network and downstream recipients of crude oil from the network, including EMOC and EMC."[34] Hence, Plaintiffs assert that HES, as a contractor, owed a duty to third parties, including Plaintiffs, "to refrain from creating hazardous conditions in the fulfillment of its obligations."[35] Accordingly, Plaintiffs contend that they have adequately alleged that HES breached said duty by possibly introducing zinc-based substances at the Anchor Project that contaminated crude oil introduced into the pipeline, and that this breach was the legal cause of Plaintiffs' harm because it was readily foreseeable that negligently allowing the pipeline network to become contaminated would harm downstream parties including Plaintiffs.[36]

### C.    HES's Arguments in Further Support of the Motion

In reply, HES reasserts that Plaintiffs have failed to show that it owed Plaintiffs a particular duty of care.[37] Specifically, HES argues that Plaintiffs were required to "point to 'any law

---

[32] *Id.*

[33] *Id.* at 4–5.

[34] *Id.* at 5 (citing R. Doc. 65 at ¶140).

[35] *Id.* (citing *Cormier v. Honiron Corp.*, 00-446 (La. App. 3 Cir. 9/27/00), 771 So. 2d 193, 197).

[36] *Id.* at 7–9.

[37] Rec. Doc. 109.

(statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty[],'" and that they failed to do so.[38] First, HES avers that Plaintiffs' assertion that HES's duty was based on their contractual relationship under Louisiana state law is inapplicable to the instant motion as that duty applies "only to personal injuries caused by contractors to third parties—not to economic harm."[39] Next, HES avers Plaintiffs alleged only that HES was one of contractors that performed well completion services for the Anchor Project, including fluidization and engineering.[40] Consequently, HES contests Plaintiffs' assertion that it owed a duty as a person who builds or repairs something, as HES asserts it played no role "in putting the well into production or in producing or transmitting fluids from the well and, as a result, could owe no duty to [Plaintiffs] related to such activities."[41] Finally, HES argues that the Amended Complaint did not and could not allege any "custodial or employment" relationship with HES that would warrant its being bound by the reasonable person in similar circumstances standard of care.[42] Accordingly, HES contends that Plaintiffs fail to satisfy the duty element of their negligence claim.[43]

HES further avers that even if Plaintiffs could show a duty of care owed to them, Plaintiffs failed to show how their alleged economic harm would fall under the scope of that duty.[44] First, HES argues that Plaintiffs never alleged that HES introduced the contaminants which allegedly

---

[38] *Id.* at 2 (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So. 2d 627, 633).

[39] *Id.* at 2–3.

[40] *Id.* at 4.

[41] *Id.*

[42] *Id.* at 4–5.

[43] *Id.* at 5.

[44] *Id.*

caused Plaintiffs' harm.[45] Additionally, HES argues that the numerous parties involved in the extraction, transport, and storage—as well as Plaintiffs' own dilution—of the oil renders HES's association with the alleged economic harm speculative at best.[46] Next, HES avers that Plaintiffs' opposition to HES's motion to dismiss mischaracterizes the foreseeability argument.[47] HES argues that "[t]o fall within the scope of a duty, it is not the conduct that must be foreseeable, but the harm,"[48] and that Plaintiffs failed to allege that the harm which would result from "diluting crude oil" would be foreseeable to HES.[49] Finally, HES avers that Plaintiffs could not "credibly allege" an unbroken chain of causation connecting HES's alleged conduct with Plaintiffs' economic harm that would satisfy the scope of the duty element.[50] Therefore, HES argues that the Court should dismiss Plaintiffs' negligence claim against it with prejudice.[51]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[52] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[53] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[45] *Id.* at 6.

[46] *Id.*

[47] *Id.* at 7.

[48] *Id.* (citing *Consol. Aluminum Co. v. C.F. Bean Corp.*, 833 F.2d 65, 68 (5th Cir. 1987)).

[49] *Id.*

[50] *Id.* at 8.

[51] *Id.*

[52] Fed. R. Civ. P. 12(b)(6).

[53] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

plausible on its face.'"[54] "Factual allegations must be enough to raise a right to relief above the speculative level."[55] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[56]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[57] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[58] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[59] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[60] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[61] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[62] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of

---

[54] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[55] *Twombly*, 550 U.S. at 555.

[56] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[57] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[58] *Iqbal*, 556 U.S. at 678–79.

[59] *Id.* at 679.

[60] *Id.* at 678.

[61] *Id.*

[62] *Id.*

the asserted claims.[63] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[64]

## IV. Analysis

HES moves the Court to dismiss the negligence claims against it, asserting that the Amended Complaint fails to plausibly allege a duty owed to Plaintiffs, a breach of said duty, or if a duty was owed that HES was the legal cause of Plaintiffs' damages. Plaintiffs contend that pursuant to Louisiana state law, HES had a duty to perform its contractual obligations with reasonable care, including ensuring the performance of its work did not cause damage to other users of the common carrier network and downstream recipients of crude oil from the Anchor Project.[65] Plaintiffs allege that HES's negligent performance of its contracted work resulted in economic, physical, and pecuniary damages to Plaintiff.[66]

Under Louisiana law a plaintiff asserting a negligence claim must prove the following elements:

(1) the defendant's conduct was cause in fact of the plaintiff's injuries;
(2) the defendant had a duty to conform conduct to a specific standard;
(3) the defendant breached that duty;
(4) the defendant's conduct was the legal cause of plaintiff's injuries; and
(5) plaintiff sustained actual damages.[67]

---

[63] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[64] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[65] Rec. Doc. 109 at 5–6.

[66] Rec. Doc. 65 at 31.

[67] *Fruge v. ONOB, Inc.*, 09-1028 (La. App. 3 Cir. 3/10/10), 32 So. 3d 1115, 1118.

Further, "[u]nder Louisiana law, the existence of a duty presents a question of law that 'varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved.'"[68] "[W]hether the defendant has breached a duty owed is a question of fact[.]"[69]

The parties' chief disputes are whether the elements of duty, breach, and legal causation have been adequately pled in the Amended Complaint. The Amended Complaint alleges that HES was a contractor on the Anchor Project and "had the duty to exercise reasonable care to ensure that the performance of [its] work did not cause damage to the other users of the common carrier network and downstream recipients of crude oil from this network, including EMOC and EMC."[70] The Amended Complaint asserts that HES breached this duty by:

> allowing or causing, through [its] negligent work on the Anchor Project, the introduction of zinc contaminated completion fluid, or some other contaminant containing zinc, into the crude oil which was then introduced into the U.S. Gulf Coast pipeline network. . . . permitting or causing the introduction of zinc-based scavengers into the crude oil which was then introduced into the U.S. Gulf Coast pipeline network. . . [which] caused the crude oil originating from the Anchor Project to be out of specification owing to its low pH and contamination with zinc, [which] became mixed with EMOC's otherwise non-contaminated crude oil and was run through EMC's Baton Rouge refinery.[71]

Further, the Amended Complaint asserts "the negligent introduction of this contamination into the crude oil by [HES] is a cause in fact and legal cause of the damages suffered by Plaintiffs because of said contamination."[72] It is inappropriate for the Court to address the parties' factual dispute

---

[68] *Burszitajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) (quoting *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994)).

[69] *Donaldson v. Sanders*, 94-1366 (La. App. 3 Cir. 7/19/95), 661 So. 2d 1010. 1014 (citing *Mundy v. Dept. of Health & Human Res.*, 620 So. 2d 811 (La. 1993)).

[70] Rec. Doc. 65 at 31.

[71] *Id.* at 31–32.

[72] *Id.* at 32.

regarding the occurrence of a breach on a motion to dismiss. Accordingly, because the Amended Complaint alleges that HES breached a duty owed, the Court finds that it adequately alleges the element of breach for the negligence claim.

Looking to whether HES owed a duty of care, the Amended Complaint cites to Louisiana law, which holds that "a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations."[73]  HES argues that this duty applies "only to personal injuries caused by contractors to third parties—not to economic harm."[74] However, the contractor-to-third party duty invoked by Plaintiffs against HES is clearly intended to apply to the alleged circumstances—a contractor whose alleged negligence is being asserted as a contributing cause of a third party's damages.[75]

HES argues that Plaintiffs fail to allege a sufficiently specific duty owed by the HES.[76] In asserting that Plaintiffs have alleged only a "duty to exercise reasonable care," HES argues that the Amended Complaint is "insufficient as a matter of law."[77] However, Plaintiffs aver in their pleadings that the low pH and zinc or zinc-like substance contamination caused their crude oil to be out-of-specification.[78] Further, the Amended Complaint asserts that the zinc contamination, and likely resulting low pH, of the crude oil is attributable to HES's negligence in its contracted well completion services on the Anchor Project.[79] Moreover, the Amended Complaint alleges that the

---

[73] Rec. Doc. 105 at 5 (citing *Cormier*, 771 So. 2d at 197).

[74] Rec. Doc. 109 at 2–3.

[75] *Cormier*, 771 So. 2d at 197.

[76] Rec. Doc. 99 at 6.

[77] *Id.*

[78] Rec. Doc. 65 at 13.

[79] *Id.* at 31–32.

zinc levels revealed by testing were "well in excess of the general industry standard."[80] The Fifth Circuit has held that "[i]ndustry standards are relevant to determining the existence of a duty."[81] "Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence."[82] "Compliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care."[83] Thus, taken as a whole the Amended Complaint alleges a sufficiently specific duty owed by HES—reasonable care or adherence to industry standards—and that HES breached that duty by contributing to crude oil contamination with zinc-based substances in excess of said industry standards.[84]

Turning to legal causation, Plaintiffs assert that in determining the scope of duty, "[t]here must be an ease of association between the rule of conduct, the risk of injury, and the loss to be recovered."[85] The Amended Complaint alleges that: the crude oil contamination likely occurred during the completion phase of the wells at the Anchor Project for which HES was a contractor; said contamination likely contributed to subsequent deficiencies in the crude oil; and those deficiencies led to physical, economic, and pecuniary damages.[86] HES argues that even if it did owe a duty to Plaintiffs, its alleged conduct cannot fall within the scope of that duty and that

---

[80] *Id.* at 10.

[81] *Dunn v. Bd. of Commissioners of Port of New Orleans*, 2025-0201 (La. App. 4 Cir. 12/3/25), 430 So. 3d 438, 442 (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180–81 (5th Cir. 1975)).

[82] *Muncie Aviation Corp*, 519 F.2d at 1180.

[83] *Id.* at 1180–81.

[84] *Id.* at 13, 31–32

[85] Rec. Doc. 105 at 7 (citing *Bd. Of Comm'rs of Se. Louisiana Flood Prot. Auth.-E v. Tennessee Gas Pipeline Co., LLC*, 88 F. Supp. 3d 615, 630-31 (E.D. La. 2015).

[86] Rec. Doc. 65 at 6, 12, 16.

Plaintiffs' alleged damages are too attenuated from HES's alleged negligence.[87] The alleged conduct and resulting damages certainly present a fact-sensitive case in which the "but for" causation inquiry must be carefully applied.[88] However, these factual inquiries cannot be decided on a motion to dismiss.

HES further avers that it could not have foreseen that its allegedly negligent well completion services would have any effect on Plaintiffs, given the numerous intervening operators and crude oil sources the allegedly contaminated product would travel through before reaching Plaintiffs.[89] However, the Louisiana Supreme Court has held that "[a]lthough ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone."[90] Plaintiffs aver that as "a large, sophisticated contractor that performs work in the oil and gas industry all around the globe[,]" that negligent work "could result in injury" to the Plaintiffs and other third parties was "readily foreseeable" to HES.[91] Plaintiffs have adequately pled facts that when taken as true allow the Court to infer, that an "ease of association" exists between HES's alleged conduct and the resulting crude oil contamination which allegedly led to Plaintiffs' loss.[92] Hence, the Court finds that Plaintiffs have met their burden of alleging a plausible negligence claim against HES.

---

[87] Rec. Doc. 99 at 7–8. HES's reliance on *In re Deepwater Horizon* to support their theory of remoteness precluding liability is misplaced, primarily because that holding is in reference to a claim under general maritime law negligence, not a negligence claim under Louisiana state law. 500 Fed. App'x. 355, 358 (5th Cir. 2012).

[88] *Roberts v. Benoit*, 605 So. 2d 1032, 1045 (La. 1991).

[89]*Id.* at 8.

[90] Rec. Doc. 105 at 7.

[91] *Id.* at 8.

[92] Rec. Doc. 65 at 6, 12, 16.

## V. Conclusion

For the reasons explained above, the Court finds the Plaintiffs have alleged a plausible negligence claim against HES. Thus, the Court denies the instant motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that HES's Motion to Dismiss[93] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this ___21st___ day of July, 2026.

_____
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[93] Rec. Doc. 99.