**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EXXONMOBIL OIL CORPORATION, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 25-2001** |
| **MARS OIL PIPELINE COMPANY, LLC, ET AL.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court is Defendant OneSubsea LLC's ("SubSea") Motion for Judgment on the Pleadings.[1] In this litigation, Plaintiffs ExxonMobil Oil Corporation ("EMOC") and Exxon Mobil Corporation ("EMC") (collectively, "Plaintiffs") bring claims against Defendants Mars Oil Pipeline Company, LLC ("Mars"), Chevron U.S.A., Inc. ("Chevron"), TotalEnergies E&P USA, Inc. ("TotalEnergies"), LOOP, LLC ("LOOP"), Amberjack Pipeline Company, LLC ("APC"), Shell Pipeline Company, LP ("SPC"), LOCAP, LLC ("LOCAP"), Halliburton Energy Services, Inc. ("HES"), Wood Group USA, Inc. ("Wood"), and SubSea (collectively, "Defendants"), to recover damages for allegedly contaminated crude oil[2] that it purchased and/or received from Defendants.[3] SubSea moves the Court to dismiss the claims against them, asserting that Plaintiffs' claims are legally insufficient.[4] Plaintiffs oppose the motion.[5] Having considered the motion, the

---

[1] Rec. Doc. 103.

[2] The terms "crude oil" and "petroleum" are used interchangeably in the parties' briefings and in this Order and Reasons.

[3] Rec. Doc. 65.

[4] Rec. Doc. 103.

[5] Rec. Doc. 106.

1

memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

In the Amended Complaint, Plaintiffs allege that crude oil purchased by EMOC and transported to EMC's Baton Rouge Refinery had low pH levels and was contaminated with zinc, which was mixed with previously non-contaminated crude oil owned by EMOC, thereby "physically damaging" EMOC's non-contaminated crude oil and causing "upset conditions" at the Baton Rouge Refinery.[6] Plaintiffs allege that the crude oil was produced by the Anchor Project[7] and passed through a network of pipelines whereby it was delivered to EMC's Baton Rouge Refinery.[8]

Plaintiffs detail each Defendant's alleged involvement in the Anchor Project and the pipeline network that transported the allegedly contaminated crude oil as follows: the Anchor Project is a joint venture between Chevron and TotalEnergies, with each company holding a working interest in the project; HES performed the well completion for the Anchor Project; SubSea developed certain key subsea components of the Anchor Project; Wood provided the design for the Anchor Project; Mars owns the Mars Pipeline System; SPC is the controlling parent company and operator of Mars; LOOP operates the LOCAP Pipeline System and owns the LOOP Pipeline System, consisting of a deepwater port, pipeline, and storage facility; APC owns the Amberjack Pipeline System; and LOCAP owns the LOCAP Pipeline.[9] Plaintiffs allege that the

---

[6] Rec. Doc. 65 at 9.

[7] The Anchor Project is an offshore oil well facility located approximately 140 miles from the Louisiana Coast on the U.S. Outer Continental Shelf. Rec. Doc. 65 at 6.

[8] Rec. Doc. 65 at 9–10.

[9] *Id.* at 3–5, 10.

contaminated crude oil was transported along the following pathway: from the Anchor Project, to the Amberjack Pipeline System, to the Mars Pipeline System, to the LOOP Pipeline System and storage facility, to the LOCAP Pipeline System, then finally to EMC's Baton Rouge refinery.[10]

After discovery of the contaminated oil, Plaintiffs allege that EMOC took samples of earlier batches of crude oil retained from the LOCAP and Mars Pipelines from June 2025, which allegedly "showed fluctuating levels of zinc."[11] Further, Plaintiffs aver that zinc does not typically occur naturally in produced crude oil, thus the elevated levels of zinc indicated the presence of impure substances.[12] Moreover, Plaintiffs claim that the network of pipelines connected to the Anchor Project operate under rate tariffs approved by the Federal Energy Regulatory Commission ("FERC") and the Louisiana Public Service Commission ("LPSC").[13] Thus, due to the contamination of the crude oil received by Plaintiffs and the alleged failure of Defendants to comply with the relevant FERC and LPSC tariffs governing the pipeline network, Plaintiffs bring various claims against Defendants including: breach of the warranty against redhibitory defects claims against TotalEnergies and Chevron; Louisiana Products Liability Act claims against LOOP, TotalEnergies, and Chevron; negligence claims against Chevron, TotalEnergies, Mars, LOOP, APC, LOCAP, SPC, HES, SubSea, and Wood; and a breach of contract claim against LOOP.[14]

---

[10] *Id.* at 3, 7–8.

[11] *Id.* at 10.

[12] *Id.*

[13] *Id.* at 7.

[14] *Id.* at 16–32.

On September 25, 2025, Plaintiffs filed a Complaint in this Court.[15] On February 25, 2026, Plaintiffs filed an Amended Complaint.[16] On April 14, 2026, SubSea filed the instant Motion for Judgment on the Pleadings.[17] On April 21, 2026, Plaintiffs filed an opposition.[18] On April 27, 2026, SubSea filed a reply brief.[19] On July 15, 2026, the Court heard oral arguments on the motion.

## II. Parties' Arguments

### A.   *SubSea's Arguments in Support of the Motion*

SubSea asserts that Plaintiffs (1) fail "to assert a legally cognizable duty" owed to them that would support the negligence claim and (2) "cannot establish that any conduct by [SubSea] was the legal cause of [their] claimed damages."[20] Regarding the element of duty, SubSea contends that Plaintiffs fail to identify a "'specific standard' of care by asserting a 'particular duty' that is based in statutory or case law."[21] Essentially, SubSea avers that Plaintiffs' generalized assertions that it failed to exercise reasonable care, without identifying a duty established by statute, jurisprudence, or other recognized legal authority, are insufficient and fatal to its negligence claim.[22] Next, SubSea asserts that Plaintiffs fail to establish SubSea's conduct as the legal cause of its alleged damages.[23] According to SubSea, Plaintiffs' unspecified allegations of negligent acts

---

[15] Rec. Doc. 1.

[16] Rec. Doc. 65.

[17] Rec. Doc. 103.

[18] Rec. Doc. 106.

[19] Rec. Doc. 108.

[20] Rec. Doc. 103-1 at 1.

[21] *Id.* at 5.

[22] *Id.*

[23] *Id.* at 6.

or omissions are too attenuated to establish causation because the allegedly contaminated product changed hands numerous times and co-mingled with other hydrocarbons before reaching Plaintiffs' refinery.[24] Overall, SubSea argues that Plaintiffs' failure to allege a legally-recognized duty and to establish SubSea's conduct as the legal cause of its damages renders the negligence claim legally insufficient and subject to dismissal with prejudice.[25]

### B.      Plaintiffs' Arguments in Opposition to the Motion

In opposition, Plaintiffs assert that the Amended Complaint sufficiently alleges both SubSea's duty and that SubSea's breach was the legal cause of Plaintiffs' damages, thereby setting out a plausible negligence claim.[26] Plaintiffs first contend that Louisiana caselaw establishes SubSea's duty to "conform its conduct to that of a reasonable contractor acting under similar circumstances and to refrain from creating hazardous conditions in the fulfillment of its obligations (the 'standard of care')."[27] Plaintiffs also aver that under Louisiana law a duty is owed to third parties and their contractors by those who build or repair something to perform their work in a "good and workmanlike manner."[28] Regarding legal causation, Plaintiffs argue that SubSea, as a "sophisticated contractor in the oil and gas industry,"[29] knew that negligent "engineering, procuring, and/or constructing" of Anchor Project components could result in the release of

---

[24] Id. at 6.

[25] Id. at 7.

[26] Rec. Doc. 106 at 4.

[27] Id. at 6.

[28] Id. at 7.

[29] Plaintiffs have attached a press release announcing SubSea's engineering, procurement, and construction award for the Anchor Project. Rec. Doc. 106-1.

contaminants into the pipeline system and harm downstream users.[30] Hence, Plaintiffs assert that each element of the negligence claim has been sufficiently pled.[31]

### C.    SubSea's Arguments in Further Support of the Motion

In reply, SubSea reasserts that Plaintiffs fail to "plead a specific duty [SubSea] owed and breached" and that SubSea's "purported breach of a general duty is the legal cause of [Plaintiffs'] alleged injury."[32] According to SubSea, Plaintiffs failed to "point to any statute, regulation, case law, or even industry standard that prohibits the use of zinc bromide in well completion, restricts the presence of zinc in crude oil tendered for shipment, sets an inacceptable level of zinc for such crude, or sets out a requisite pH level for such crude."[33] Regarding the element of legal causation, SubSea reasserts that the alleged injury was too attenuated because the crude oil took a "circuitous, indirect path" from the production well to Plaintiffs' refinery and SubSea's role in the alleged contamination is entirely unknown.[34] Hence, SubSea contends that its conduct is not easily associated with the claimed harm, thus Plaintiffs fail to adequately plead legal causation.[35]

## III. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[36] A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a

---

[30] *Id.* at 10.

[31] *Id.* at 12.

[32] Rec. Doc. 108 at 1.

[33] *Id.*

[34] *Id.* at 4–5.

[35] *Id.* at 5.

[36] Fed. R. Civ. P 12(c).

judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[37] The motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."[38] "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[39] In ruling on a 12(c) motion, "[p]leadings should be construed liberally," and judgment is appropriate "only if there are no disputed issues of fact and only questions of law remain."[40] The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," but need not "accept as true conclusory allegations or unwarranted deductions of fact."[41] The Court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[42]

## IV. Analysis

SubSea moves the Court to dismiss the negligence claim against it, asserting that the Amended Complaint fails to plausibly allege a duty owed to Plaintiffs, or that SubSea's alleged breach of said duty was the legal cause of Plaintiffs' damages. Plaintiffs contend that pursuant to Louisiana law, SubSea had a duty to exercise reasonable care to ensure that it did not cause damage to downstream recipients of crude oil from the network. Plaintiffs also aver that SubSea's conduct was the legal cause of its physical and economic damages.

---

[37] *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd*., 914 F.2d 74, 76 (5th Cir. 1990)).

[38] *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

[39] *Great Plains Tr. Co.*, 313 F.3d at 312 (alteration in original) (quoting *Hughes v. Tobacco Inst., Inc*., 278 F.3d 417, 420 (5th Cir. 2001)).

[40] *Id.* (quoting *Hughes*, 278 F.3d at 420).

[41] *Id*. at 312–13 (first quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); then quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (2000)).

[42] *Id.* at 312 (quoting *Jones*, 188 F.3d at 324).

Under Louisiana law a plaintiff asserting a negligence claim must prove the following elements:

(1) the defendant's conduct was cause in fact of the plaintiff's injuries;
(2) the defendant had a duty to conform conduct to a specific standard;
(3) the defendant breached that duty;
(4) the defendant's conduct was the legal cause of plaintiff's injuries; and
(5) plaintiff sustained actual damages.[43]

Further, "[u]nder Louisiana law, the existence of a duty presents a question of law that 'varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved.'"[44] "[W]hether the defendant has breached a duty owed is a question of fact[.]"[45]

The parties' chief dispute is whether the elements of duty, breach, and legal causation have been adequately pled in the Amended Complaint. The Amended Complaint alleges that SubSea was a contractor on the Anchor Project, and therefore, owed a duty of reasonable care to third parties.[46] The Amended Complaint also asserts that SubSea breached its duty by allowing or causing "the introduction of zinc contaminated completion fluid, or some other contaminant containing zinc, into the crude oil" through its negligent work on the Anchor Project, its failure to procure an isolation strategy, and by permitting or causing the introduction of zinc-based scavengers into the crude oil.[47] Specifically, the Amended Complaint alleges that SubSea's

---

[43] *Fruge v. ONOB, Inc.*, 09-1028 (La. App. 3 Cir. 3/10/10), 32 So. 3d 1115, 1118.

[44] *Burszitajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) (quoting *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994)).

[45] *Donaldson v. Sanders*, 94-1366 (La. App. 3 Cir. 7/19/95), 661 So. 2d 1010. 1014 (citing *Mundy v. Dept. of Health & Human Res.*, 620 So. 2d 811 (La. 1993)).

[46] Rec. Doc. 65 at 31.

[47] *Id.* at 31–32.

negligent work as the developer of "certain subsea components" on the Anchor Project contributed the contamination of the crude oil.[48] It is inappropriate for the Court to address the parties' factual dispute regarding the occurrence of a breach on a motion to dismiss. Accordingly, because the Amended Complaint alleges that SubSea breached a duty owed, the Court finds that it adequately alleges the element of breach for the negligence claim.

As to the element of duty, the Amended Complaint asserts that SubSea had a "duty to exercise reasonable care to ensure that the performance of [its] work did not cause damage to . . . downstream recipients of crude oil from this network."[49] SubSea avers that Plaintiffs must allege a "more 'specific standard' of care by asserting a 'particular duty' based in statutory or case law," and that the "universal duty" to use "reasonable care" is insufficient here.[50] However, Plaintiffs point specifically to a contractor's duty to exercise reasonable care in the fulfillment of contractual obligations.[51] Further, the Amended Complaint alleges that testing revealed the crude oil's zinc levels to be "well in excess of the general industry standard."[52]

The Fifth Circuit has held that "[i]ndustry standards are relevant to determining the existence of a duty."[53] "Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence."[54] "Compliance or

---

[48] *Id.* at 6, 31.

[49] *Id.* at 31.

[50] Rec. Doc. 108 at 4.

[51] Rec. Doc. 106 at 6 (citing *Cormier v. Honiron Corp.*, 00-446 (La. App. 3 Cir. 9/27/00), 771 So. 2d 193, 197) (referring to La. Rev. Stat. § 9:2771.)).

[52] Rec. Doc. 65 at 10.

[53] *Dunn v. Bd. of Commissioners of Port of New Orleans*, 2025-0201 (La. App. 4 Cir. 12/3/25), 430 So. 3d 438, 442 (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180–81 (5th Cir. 1975)).

[54] *Muncie Aviation Corp*, 519 F.2d at 1180.

noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care."[55] Hence, Plaintiffs' allege sufficiently specific standards of care—adherence to industry standards and contractual obligations—and that SubSea breached those duties by contaminating the crude oil. Therefore, the Court finds that Plaintiffs have met their burden of alleging the element of duty for the negligence claim.

Turning to legal causation, Plaintiffs assert that in determining the scope of duty, "[t]here must be an ease of association between the rule of conduct, the risk of injury, and the loss to be recovered."[56] The Amended Complaint alleges that: the crude oil contamination likely occurred during the completion phase of the wells at the Anchor Project for which SubSea was a contractor that developed "certain subsea components"; said contamination likely contributed to subsequent deficiencies in the crude oil; and those deficiencies led to Plaintiffs' damages.[57] SubSea argues that its alleged conduct is not easily associated with and too attenuated from Plaintiffs' alleged damages given the numerous intervening operators and crude oil sources the allegedly contaminated product traveled through before reaching Plaintiffs.[58] However, the Louisiana Supreme Court has held that "[a]lthough ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone."[59] Plaintiffs aver that as "a sophisticated contractor in the oil and gas industry[,] . . . Sub[S]ea well understood the impact that negligently

---

[55] *Id.* at 1180–81.

[56] Rec. Doc. 106 at 9 (citing *Bd. Of Comm'rs of Se. Louisiana Flood Prot. Auth.-E v. Tennessee Gas Pipeline Co., LLC*, 88 F. Supp. 3d 615, 630-31 (E.D. La. 2015)).

[57] Rec. Doc. 65 at 6, 12, 16.

[58] Rec. Doc. 103-1 at 6.

[59] *Roberts v. Benoit*, 605 So. 2d 1032, 1045 (La. 1991).

performing its work in engineering, procuring, and/or constructing the subsea components of the Anchor Project could have on the other users of the network[,]" including the harm suffered by Plaintiffs.[60] Plaintiffs have adequately pled facts that when taken as true allow the Court to infer that an "ease of association" exists between SubSea's alleged conduct and the resulting crude oil contamination, which allegedly led to Plaintiffs' loss.[61] Hence, the Court finds that Plaintiffs have met their burden of alleging the legal causation element for the negligence claim against SubSea.

## V. Conclusion

For the reasons explained above, the Court finds the Plaintiffs have alleged a plausible negligence claim against SubSea. Thus, the Court denies the instant motion for judgment on the pleadings.

Accordingly,

**IT IS HEREBY ORDERED** that SubSea's Motion for Judgment on the Pleadings[62] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this ___21st___ day of July, 2026.

_____
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[60] Rec. Doc. 106 at 8.

[61] Rec. Doc. 65 at 6, 12, 16.

[62] Rec. Doc. 103.