**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**EXXONMOBIL OIL CORPORATION, ET AL.**          **CIVIL ACTION**

**VERSUS**          **CASE NO. 25-2001**

**MARS OIL PIPELINE COMPANY, LLC, ET AL.**          **SECTION: "G"(2)**

**ORDER AND REASONS**

Before the Court is Defendant LOOP, LLC's ("LOOP") Motion for Judgment on the Pleadings.[1] In this litigation, Plaintiffs ExxonMobil Oil Corporation ("EMOC") and Exxon Mobil Corporation ("EMC") (collectively, "Plaintiffs") bring claims against Defendants Mars Oil Pipeline Company, LLC ("Mars"), Chevron U.S.A., Inc. ("Chevron"), TotalEnergies E&P USA, Inc. ("TotalEnergies"), LOOP, Amberjack Pipeline Company, LLC ("APC"), Shell Pipeline Company, LP ("SPC"), LOCAP, LLC ("LOCAP"), Halliburton Energy Services, Inc. ("HES"), Wood Group USA, Inc. ("Wood"), and OneSubsea, LLC ("SubSea") (collectively, "Defendants"), to recover damages for allegedly contaminated crude oil[2] that it purchased and/or received from Defendants.[3] LOOP moves the Court to dismiss the claims against it, asserting that Plaintiffs fail to state a plausible claim for relief.[4] Plaintiffs oppose the motion.[5] Having considered the motion,

---

[1] Rec. Doc. 129.

[2] The terms "crude oil" and "petroleum" are used interchangeably in the parties' briefings and in this Order and Reasons.

[3] Rec. Doc. 65.

[4] Rec. Doc. 129.

[5] Rec. Doc. 138.

1

the memoranda in support and in opposition, the record, and the applicable law, the Court denies

the motion.

## I. Background

In the Amended Complaint, Plaintiffs allege that crude oil purchased by EMOC and

transported to EMC's Baton Rouge Refinery had low pH levels and was contaminated with zinc,

which was mixed with previously non-contaminated crude oil owned by EMOC, thereby

"physically damaging" EMOC's non-contaminated crude oil and causing "upset conditions" at the

Baton Rouge Refinery.[6] Plaintiffs allege that the crude oil was produced by the Anchor Project[7]

and passed through a network of pipelines whereby it was delivered to EMC's Baton Rouge

Refinery.[8]

Plaintiffs detail each Defendant's alleged involvement in the Anchor Project and the

pipeline network that transported the allegedly contaminated crude oil as follows: the Anchor

Project is a joint venture between Chevron and TotalEnergies, with each company holding a

working interest in the project; HES performed the well completion for the Anchor Project;

SubSea developed certain key subsea components of the Anchor Project; Wood provided the

design for the Anchor Project; Mars owns the Mars Pipeline System; SPC is the controlling parent

company and operator of Mars; LOOP operates the LOCAP Pipeline System and owns the LOOP

Pipeline System, consisting of a deepwater port, pipeline, and storage facility; APC owns the

Amberjack Pipeline System; and LOCAP owns the LOCAP Pipeline System.[9] Plaintiffs allege that

---

[6] Rec. Doc. 65 at 9.

[7] The Anchor Project is an offshore oil well facility located approximately 140 miles from the Louisiana
Coast on the U.S. Outer Continental Shelf. Rec. Doc. 65 at 6.

[8] Rec. Doc. 65 at 9–10.

[9] *Id.* at 3–5, 10.

the contaminated crude oil was transported along the following pathway: from the Anchor Project, to the Amberjack Pipeline System, to the Mars Pipeline System, to the LOOP Pipeline System and storage facility, to the LOCAP Pipeline System, then finally to EMC's Baton Rouge refinery.[10]

After discovery of the contaminated oil, Plaintiffs allege that EMOC took samples of earlier batches of crude oil retained from the LOCAP and Mars Pipelines from June 2025, which allegedly "showed fluctuating levels of zinc."[11] Further, Plaintiffs aver that zinc does not typically occur naturally in produced crude oil, thus the elevated levels of zinc indicated the presence of impure substances.[12] Moreover, Plaintiffs claim that the network of pipelines connected to the Anchor Project operate under rate tariffs approved by the Federal Energy Regulatory Commission ("FERC") and the Louisiana Public Service Commission ("LPSC").[13] Thus, due to the contamination of the crude oil received by Plaintiffs and the alleged failure of Defendants to comply with the relevant FERC and LPSC tariffs governing the pipeline network, Plaintiffs bring various claims against Defendants including: breach of the warranty against redhibitory defects claims against TotalEnergies and Chevron; Louisiana Products  Liability Act ("LPLA") claims against LOOP, TotalEnergies, and Chevron; negligence claims against Chevron, TotalEnergies, Mars, LOOP, APC, LOCAP, SPC, HES, SubSea, and Wood; and a breach of contract claim against LOOP.[14]

---

[10] *Id.*  at 3, 7–8.

[11] *Id.* at 10.

[12] *Id.*

[13] *Id.* at 7.

[14] *Id.* at 16–32.

On September 25, 2025, Plaintiffs filed a Complaint in this Court.[15] On February 25, 2026, Plaintiffs filed an Amended Complaint.[16] On June 18, 2026, LOOP filed the instant Motion for Judgment on the Pleadings.[17] On June 30, 2026, Plaintiffs filed an opposition.[18] On July 6, 2026, LOOP filed a reply brief.[19] On July 15, 2026, the Court heard oral arguments on the motion.

## II. Parties' Arguments

### A.   LOOP's Arguments in Support of the Motion

LOOP asserts that Plaintiffs have "not pled any law, regulation, industry practice, or contractual provision establishing that LOOP owed a duty to chemically analyze or test crude oil for contaminants. Nor has Exxon pled sufficient facts to show that LOOP is subject to manufacturer liability under the LPLA."[20] Further, LOOP contends that the Amended Complaint does not allege how LOOP failed to make "Commercially Reasonable Best Efforts" to deliver the "Same Crude Petroleum" to EMOC —as those terms are actually defined in the Terminal Throughput and Deficiency Agreement ("TTD Agreement").[21]

Turning to the negligence claim against it, LOOP contends that Plaintiffs have "failed to plead any law, regulation, or industry practice establishing that LOOP owed a duty to chemically analyze or test crude oil for zinc bromide."[22] Further, LOOP points out that the FERC and LPSC

---

[15] Rec. Doc. 1.

[16] Rec. Doc. 65.

[17] Rec. Doc. 129.

[18] Rec. Doc. 138.

[19] Rec. Doc. 141.

[20] Rec. Doc. 129 at 1.

[21] Rec. Doc. 129-1 at 6.

[22] *Id.* at 2.

tariffs cited in the Amended Complaint do not apply to LOOP.[23] Moreover, LOOP avers that the Amended Complaint contains no facts supporting the assertion that LOOP "operat[ed] in an unreasonable manner."[24] Additionally, LOOP asserts that if the LPLA claim against it is allowed, that claim would subsume the negligence claim.[25] Thus, LOOP argues the negligence claim against it should be dismissed.[26]

As to the LPLA claim, LOOP contends that crude oil is not a manufactured "product" under the LPLA.[27] Instead, LOOP argues that crude oil is a natural resource which does not fall within the scope of the LPLA.[28] Further, LOOP avers that the Amended Complaint fails to "identify the 'specifications or performance standards' applicable to crude oil or explain how the crude oil at issue 'deviated' from those standards—essential elements of a defective-composition claim."[29] Moreover, LOOP asserts that the Amended Complaint fails to adequately allege that LOOP is a "manufacturer" under the LPLA.[30] LOOP contends that it is not a manufacturer because it did not "produc[e], mak[e], fabricat[e], construct[], design[], remanufactur[e], recondition[], or refurbish[]" the crude oil at issue.[31] Additionally, LOOP avers that, contrary to the allegations in the Amended Complaint, it did not exercise the type of control over the transactions of crude oil

---

[23] *Id.*

[24] *Id.* (citing Rec. Doc. 65 at 30).

[25] *Id.* at 2–3.

[26] *Id.* at 2.

[27] *Id.* at 3.

[28] *Id.*

[29] *Id.* at 3–4.

[30] *Id.* at 4.

[31] *Id.* (quoting La. Rev. Stat. § 9:2800.53(1)).

in its pipeline that would impose the role of a seller-manufacturer on LOOP under the LPLA.[32] Hence, LOOP argues that the LPLA claim against it should be dismissed.[33]

Turning to the breach of contract claim against it, LOOP asserts that the Amended Complaint "fails to state a claim against LOOP for breach of the September 29, 2023 [TTD Agreement] between EMOC and LOOP."[34] Specifically, LOOP contends that the Amended Complaint does not allege how LOOP failed to make "Commercially Reasonable Best Efforts" to deliver the "Same Crude Petroleum" to EMOC —as those terms are actually defined in the TTD Agreement.[35] Therefore, LOOP argues that Plaintiffs' breach of contract claim is merely a conclusory assertion that should be dismissed by this Court.[36]

**B.     *Plaintiffs' Arguments in Opposition to the Motion***

In opposition, Plaintiffs assert that the motion should be denied because they have stated plausible claims for relief against LOOP.[37] Specifically, Plaintiffs contend that they have adequately alleged the LPLA, negligence, and breach of contract claims against LOOP.[38] First Plaintiffs aver that the LPLA claim does not preclude the negligence claim because Plaintiffs are permitted to plead alternatively at this stage of litigation.[39] Plaintiffs submit that if the Court determines that the claims against LOOP fall under the LPLA then the negligence claim against it

---

[32] *Id.* at 4–5.

[33] *Id.* at 5.

[34] *Id.*

[35] *Id.* at 6.

[36] *Id.*

[37] Rec. Doc. 138 at 1.

[38] *Id.* at 5, 12, 14.

[39] *Id.* at 5.

should be dismissed, but if the LPLA is not applicable here then the negligence claim is a valid alternative claim.[40]

Turning to the substance of the LPLA claim, Plaintiffs assert that crude oil falls within the LPLA's definition of a manufactured product and LOOP is a manufacturer under the LPLA.[41] Specifically, Plaintiffs contend that once crude oil is removed from the ground it falls within the definition of a "product" under the LPLA, because it was "treated and modified . . . at the well/platform prior to placing it into the pipeline network and into commerce."[42] Further, Plaintiffs point out that the crude oil at issue was further mixed at LOOP's facility with crude oil coming in from other sources, placing LOOP in the position of manufacturer in relation to the crude oil because it was in its custody and control when altered.[43] Moreover, Plaintiffs contend that they have adequately alleged the defect and causation elements of the LPLA claim.[44] Plaintiffs point out that the Amended Complaint alleges that "the pH levels and zinc levels in the crude oil that they received through the pipeline system was out-of-specification based on general industry accepted practice."[45] Further, Plaintiffs aver that the Amended Complaint details the testing results showing the excess levels of zinc in the crude oil.[46]

As to the negligence claim, Plaintiffs assert they have adequately alleged that: "(i) LOOP had a duty to conform its conduct to a specific standard of care; and (ii) that LOOP breached that

---

[40] *Id.* at 6.

[41] *Id.*

[42] *Id.* at 7.

[43] *Id.* at 7–8.

[44] *Id.*

[45] *Id.*

[46] *Id.*

duty" resulting in injury to Plaintiffs.[47] Particularly, Plaintiffs contend that LOOP had the general duty to conform its standard of conduct in its operations to that of a reasonable person and that "LOOP breached this duty by operating in an unreasonable manner and permitting the low pH and contaminated crude oil to become mixed with EMOC's otherwise in-specification and non-contaminated crude oil and to eventually reach EMC's Baton Rouge Refinery, all with resultant physical and economic damage."[48] Additionally, Plaintiffs aver that LOOP holds itself out as being the operator of the LOCAP Pipeline System on its website and therefore has a duty to comply with the FERC tariff governing the LOCAP Pipeline System.[49] Accordingly, Plaintiffs assert that LOOP may be liable for negligence for both violating its duty to conform to industry standards and failing to adhere to the FERC tariff governing the LOCAP Pipeline System.[50] Moreover, Plaintiffs contend that LOOP arguably had custodial responsibility of the crude oil when it was within its control, which is another basis for the imposition of a legal duty under Louisiana law.[51]

Next, Plaintiffs aver that they have pled "sufficient allegations that, when taken as true, set out a plausible claim for relief against LOOP for breach of contract."[52] Specifically Plaintiffs submit that the Amended Complaint alleges:

> (i)      the existence of the TTD Agreement which created obligations owed by LOOP to EMOC, including the obligation of LOOP to exercise "Commercially Reasonable Best Efforts" to deliver to EMOC the same crude oil which EMOC deposited into LOOP's system for storage;

---

[47] *Id.* at 12.

[48] *Id.* at 12–13.

[49] *Id.* at 13.

[50] *Id.* at 14.

[51] *Id.*

[52] *Id.* at 15.

(ii)     that LOOP breached its obligations to EMOC under the TTD Agreement by failing to exercise "Commercially Reasonable Best Efforts" to deliver to EMOC the same crude oil which EMOC deposited into LOOP's system for storage; and

(iii)     that LOOP's breach of its obligations under the TTD Agreement resulted in EMOC suffering damages through its incurring of unexpended additional costs, lost profits, and consequential reputational damage.[53]

Plaintiffs assert the Amended Complaint alleges that LOOP failed to make "Commercially Reasonable Best Efforts" to deliver the "Same Crude Petroleum" because "[d]uring transportation through the Amberjack Pipeline system and the Mars Pipeline system, and during storage at LOOP LLC's storage facility at Clovelly, Louisiana, the low pH and contaminated crude oil was mixed with crude oil owned by EMOC, thereby contaminating and damaging EMOC's crude oil."[54] Thus, Plaintiffs contend they have adequately pled the breach of contract claim.[55]

## C.     LOOP's Arguments in Further Support of the Motion

In reply, LOOP reasserts that Plaintiffs have not alleged LOOP owed it a duty to test the crude oil for zinc bromide, that LOOP is a "manufacturer" under the LPLA, or that LOOP breached the TTD Agreement.[56] Further, LOOP contends that if the Court allows the LPLA claim against it to proceed then the negligence claim should be dismissed as a matter of law.[57] Moreover, LOOP avers that FERC Tariff 12.28.0 does not apply to it because that tariff expressly defines the "Carrier" with duties under the Tariff as LOCAP—not LOOP.[58] Additionally, LOOP points out that the custodial basis for LOOP's alleged negligence is pled for the first time in Plaintiffs'

---

[53] *Id.*

[54] *Id.* at 16 (quoting Rec. Doc. 65 at 13).

[55] *Id.*

[56] Rec. Doc. 141 at 1.

[57] *Id.* at 2.

[58] *Id.*

opposition, and therefore should not be considered by the Court.[59] Furthermore, LOOP asserts that the TTD Agreement requires LOOP to have "intentionally degraded" the crude oil for LOOP to breach the contract.[60] Hence, LOOP avers that because the Amended Complaint does not allege that it "intentionally degraded" the crude oil, the breach of contract claim must fail.[61] Therefore, LOOP urges the Court to dismiss all of Plaintiffs' claims against it.[62]

### III. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[63] A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[64] The motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."[65] "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[66] In ruling on a 12(c) motion, "[p]leadings should be construed liberally," and judgment is appropriate "only if there are no disputed issues of fact and

---

[59] *Id.* at 4.

[60] *Id.* at 7.

[61] *Id.*

[62] *Id.* at 8.

[63] Fed. R. Civ. P 12(c).

[64] *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

[65] *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

[66] *Great Plains Tr. Co.*, 313 F.3d at 312 (alteration in original) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).

only questions of law remain."[67] The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," but need not "accept as true conclusory allegations or unwarranted deductions of fact."[68] The Court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[69]

### IV. Analysis

#### A.    Louisiana Product Liability Act Claim

Beginning with the LPLA claim, the Amended Complaint alleges that LOOP is liable "because low pH and contaminated crude oil was unreasonably dangerous in its construction and/or composition, and [Plaintiffs] suffered damages as a result of their reasonable use of the product."[70] Further, the Amended Complaint asserts that LOOP is a "manufacturer" under the LPLA and that the contaminated crude oil is a "product" under the LPLA.[71]

LOOP argues that it is not a manufacturer and crude oil is not a manufactured product subject to the LPLA, and Plaintiffs fail properly define the "specifications or performance standards" applicable to crude oil, or how the LOOP deviated from said standards.[72] Under the LPLA, "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical

---

[67] *Id.* (quoting *Hughes*, 278 F.3d at 420).

[68] *Id*. at 312–13 (first quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); then quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (2000)).

[69] *Id*. at 312 (quoting *Jones*, 188 F.3d at 324).

[70] Rec. Doc. 65 at 19.

[71] *Id*. at 21.

[72] Rec. Doc. 129-1 at 3–5.

products manufactured by the same manufacturer."[73] Turning first to LOOP's assertion that it is not a "manufacturer[,]" it is true that the LPLA "only applies to manufacturers."[74] "Generally, a manufacturer is 'a person or entity who is in the business of manufacturing a product for placement into trade or commerce.'"[75] "Manufacturing a product" means "producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product."[76] However, by definition, "a manufacturer includes a seller in two circumstances: (1) when the seller exercises control over a characteristic of the product's design, construction, or quality; and (2) when the seller imports and distributes products of a foreign manufacturer if the seller is the manufacturer's alter ego."[77]

The Court first considers LOOP's assertion that crude oil is not a manufactured product under the LPLA. Plaintiffs point out that the Amended Complaint alleges that Chevron "treated and modified the crude oil at the well/platform prior to placing it into the pipeline network and into commerce."[78] Thus, Plaintiffs contend that the crude oil was transformed from a raw material to a manufactured product by Chevron. Clearly, significantly refined petroleum products such as gasoline are "manufactured products" under the LPLA.[79] However, neither party has cited any

---

[73] *Dendinger v. Covidien, LP*, No. 18-4168, 2018 WL 4462579, at *2 (E.D.L.A. Sept. 18, 2018) (quoting La. Rev. Stat. § 9:2800.55).

[74] *Pickard v. Amazon.com, Inc.*, 2023-01596 (La. 6/28/24), 387 So. 3d 515, 518 (citing La. Rev. Stat. § 9:2800.52).

[75] *Id.* (quoting La. Rev. Stat. § 9:2800.53(1)).

[76] *Id.*

[77] *Id.*

[78] Rec. Doc. 89 at 6.

[79] *In re Methyl Tertieary Butyl Ether (MTBE) Prods. Liab. Litig.*, 379 F. Supp. 2d 348. 408 (S.D.N.Y. 2005) (dismissing all non-LPLA claims concerning allegedly defective gasoline because the LPLA precluded the other claims).

authority, and this Court has been unable to locate any authority, establishing how much modification crude oil needs to undergo before it is considered a "manufactured product" under the LPLA. Further, the Amended Complaint alleges that LOOP is a manufacturer of the contaminated crude oil because it "incorporated and blended the product of other crude oil suppliers with the low pH and contaminated crude oil from TotalEnergies/Chevron, and this blended product was subsequently sold to EMOC."[80] At the motion to dismiss stage, Plaintiffs have pled sufficient facts to allege that LOOP is a manufacturer of crude oil under the LPLA.

As to the LPLA elements of defect and causation, the Amended Complaint alleges that the zinc and pH levels of the crude oil was "out-of-specification, based on general industry accepted practice[,]" and that LOOP may have caused this defect by blending crude oil received from multiple sources before selling it to EMOC.[81] Thus, Plaintiffs have adequately alleged causation and damages by claiming that the contaminated crude oil may have been caused by LOOP blending contaminated crude oil with non-contaminated crude oil, which caused damage to Plaintiffs' pipelines and facility.[82]

Under the LPLA, a claimant must also show "not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'"[83] Here, Plaintiffs allege that testing revealed excess zinc levels ranging from 9.3 to 14.2 parts per million, which Plaintiffs allege violated general industry standards.[84] LOOP does not cite any authority to support its

---

[80] Rec. Doc. 65 at 21.

[81] *Id.* at 9, 21.

[82] *Id.* at 22.

[83] *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017).

[84] Rec. Doc. 65 at 10.

13

assertion that this allegation is insufficient to state a claim under the LPLA. Accordingly, the Court finds that Plaintiffs have alleged sufficient facts to state an LPLA claim against LOOP.

## B.    Breach of Contract Claim

Looking to the breach of contract claim, LOOP contends that the Amended Complaint does not allege how LOOP failed to make "Commercially Reasonable Best Efforts" to deliver the "Same Crude Petroleum" to EMOC—as those terms are actually defined in the TTD Agreement. In order to prevail on a breach of contract claim, the plaintiff must prove by a preponderance of the evidence: "1) defendant owned him an obligation; 2) defendant failed to perform the obligation; and 3) defendant's failure to perform resulted in damage to the plaintiff."[85] "A contract for work or services carries an implied obligation on the contractor to perform in a workmanlike manner, in default of which he must respond in damages for the losses that may ensue."[86]

The Amended Complaint alleges that under the TTD Agreement LOOP "agreed to store and throughput EMOC's crude oil through [LOOP's] system."[87] Specifically, the Amended Complaint states that under the TTD Agreement "[LOOP] agreed that it would receive and store crude oil from EMOC and 'make Commercially Reasonable Best Effort to deliver the Same Crude Petroleum to [EMOC] that was received by [EMOC].'"[88] Further, the Amended Complaint alleges that LOOP breached the TTD Agreement by "failing to exercise 'Commercially Reasonable Best Efforts' to deliver to EMOC the same crude oil which EMOC deposited into [LOOP's] system for storage."[89] Moreover, the Amended Complaint submits that LOOP's "breach of its obligations to

---

[85] *Stipp v. MetLife Auto & Home Ins. Agency, Inc.*, 17-61 (La. App. 5 Cir. 8/30/17), 225 So. 3d 1182, 1189.

[86] *Id.* (citing La. Civ. Code arts. 1994, 2769).

[87] Rec. Doc. 65 at 32.

[88] *Id.*

[89] *Id.* at 33.

14

EMOC resulted in damage to otherwise non-contaminated crude oil owned by EMOC, resulting in EMOC having to incur unexpected additional costs and resulting in lost profits for EMOC."[90]

Under the TTD Agreement, "Commercially Reasonable Best Efforts" is defined as "the efforts that a commercial counterparty desirous of achieving a result would diligently use to ensure that such a result is achieved as expeditiously as possible in light of then-existing operational conditions of the Terminals."[91] Further, the TTD Agreement defines "Same Crude Petroleum" as "Crude Petroleum that (1) meets the same specifications of the Crude Petroleum that was tendered by Customer, but which does not have to be identical molecules, *and* (2) has not been intentionally degraded in quality in the delivery of Services by LOOP."[92] The definition of "Commercially Reasonable Best Efforts" is a broad fact-based standard, making it inappropriate for the Court to determine if LOOP breached this standard at the motion to dismiss stage. Moreover, "Same Crude Petroleum" identifies two elements that must be met in order for petroleum to fall within this definition. Thus, the Amended Complaint's allegation that the crude oil received was "out-of-specification" is enough to allege that the first element was not met with respect to the contaminated crude oil.[93] Accordingly, Plaintiffs have adequately alleged in the Amended Complaint that LOOP breached its contractual obligation in the TTD Agreement to use its "Commercially Reasonable Best Efforts" to deliver the "Same Crude Petroleum" to EMOC, resulting in damages to EMOC's non-contaminated oil. Hence, the Court denies the instant motion to the extent it seeks dismissal of the breach of contract claim.

---

[90] *Id.* at 33.

[91] Rec. Doc. 1-5 at 2.

[92] *Id.* at 5 (emphasis added).

[93] Rec. Doc. 65 at 9.

## C.    *Negligence Claim*

Turning to the negligence claim, LOOP asserts that the LPLA bars this claim. Further, even if the LPLA does not bar the negligence claim, LOOP contends that this claim fails because the Amended Complaint does not allege a duty owed to Plaintiffs. Plaintiffs contend that pursuant to FERC Tariff 12.28.0, LOOP had a duty to operate the LOCAP Pipeline System with reasonable diligence, including not shipping contaminated crude oil downstream. Further, the Amended Complaint alleges that LOOP had a general duty to conform its conduct to that of a reasonable person, and that Plaintiffs may plead a claim of negligence in the alternative, in the event that LOOP is not considered a manufacturer under the LPLA.

Under Louisiana law a plaintiff asserting a negligence claim must prove the following elements:

> (1) the defendant's conduct was cause in fact of the plaintiff's injuries;
> (2) the defendant had a duty to conform conduct to a specific standard;
> (3) the defendant breached that duty;
> (4) the defendant's conduct was the legal cause of plaintiff's injuries; and
> (5) plaintiff sustained actual damages.[94]

As discussed above, the issue of whether LOOP is a manufacturer under the LPLA cannot be resolved on a motion to dismiss. The LPLA provides that it "establishes the exclusive theories of liability for manufacturers for damages caused by their products."[95] However, there are factual questions in dispute regarding whether LOOP may be held liable as a manufacturer under the LPLA. Where there are facts in dispute regarding whether an entity is a manufacturer under the LPLA, courts have found that negligence may be pled as an alternative theory of liability.[96]

---

[94] *Fruge v. ONOB, Inc.*, 09-1028 (La. App. 3 Cir. 3/10/10), 32 So. 3d 1115, 1118.

[95] La. Rev. Stat. art. § 9:2800.52.

[96] *Becnel v. Mercedes-Benz USA, LLC*, No. 14-0003, 2014 WL 1918468, * 8–9 (E.D. La. May 13, 2014); *Kline v. Nielsen & Hiebert Sys., Inc.*, No. 12-1412, 2012 WL 5288137, at *2 (W.D. La. Oct. 23, 2012)

The parties' chief dispute is whether the elements of duty and breach have been adequately pled in the Amended Complaint. "Under Louisiana law, the existence of a duty presents a question of law that 'varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved.'"[97] "[W]hether the defendant has breached a duty owed is a question of fact[.]"[98]

The Amended Complaint alleges that:

> [t]he negligent failure of [LOOP] to reject the low pH and contaminated shipments of crude oil resulted in this low pH and contaminated crude oil becoming mixed with EMOC's otherwise in-specification and non-contaminated crude oil, causing physical and economic damage. As such, the negligent failure of [LOOP] to reject the low pH and zinc contaminated shipments of crude oil is a cause-in-fact and legal cause of the damages suffered by EMOC.[99]

Further, the Amended Complaint asserts that "additionally and/or alternatively [LOOP] . . . had a general duty to conform [its] standard of conduct in [its] operations to the standard of conduct of a reasonable person."[100] Because the Amended Complaint alleges that LOOP breached a duty owed, it is inappropriate for the Court to address the parties' factual dispute regarding the occurrence of said breach. Accordingly, the Amended Complaint adequately alleges the element of breach for the negligence claim.

Turning to the element of duty, Plaintiffs allege that FERC Tariff 12.28.0, which allegedly governs transportation of petroleum on the LOCAP Pipeline System, creates a duty owed by LOOP in favor of Plaintiffs, because LOOP allegedly operates the LOCAP Pipeline System.

---

[97] *Burszitajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) (quoting *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994)).

[98] *Donaldson v. Sanders*, 94-1366 (La. App. 3 Cir. 7/19/95), 661 So.2d 1010. 1014 (citing *Mundy v. Dept. of Health & Human Res.*, 620 So.2d 811 (La.1993)).

[99] Rec. Doc. 65 at 30.

[100] *Id.*

17

The Amended Complaint cites Tariff 12.28.0, at Item No. 15, as one source of LOOP's alleged duty, which is titled "Specification As To Quality Received." Item No. 15 states:

> Good merchantable petroleum of the gravity of twenty degrees (20°) API (American Petroleum Institute) or higher which is properly settled and contains not more than two percent (2%) of basic sediment, water, and other impurities, and has a temperature not in excess of one hundred twenty degrees (120°) Fahrenheit will be accepted for transportation. No petroleum will be accepted unless its gravity, viscosity, and other characteristics are such that it will be readily susceptible of transportation through the Carrier's existing facilities, and it will not materially affect the quality of other shipments or cause disadvantage to other shippers and/or the Carrier.[101]

Tariff 12.28.0, at Item No. 5, states, "'Carrier' as herein used means LOCAP LLC."[102] LOCAP is the sole tariff holder identified as the Carrier owing duties under Tariff 12.28.0. Further, Plaintiffs fail to cite any authority that would allow a duty to arise from a tariff that would be imposed on an entity that is not the tariff holder. Thus, the Court finds the Tariff 12.28.0 does not impose a duty from LOOP to Plaintiffs.

The Amended Complaint further asserts that LOOP had a "general duty to conform [its] standard of conduct in [its] operations to the standard of conduct of a reasonable person[,]" and that the contaminated crude oil "contained impurities well above industry accepted concentrations."[103] Moreover, the Amended Complaint alleges in detail that LOOP breached its duty of reasonable care by allowing the contaminated crude oil to flow downstream from its facility. The Fifth Circuit has held that "[i]ndustry standards are relevant to determining the existence of a duty."[104] "Evidence of custom within a particular industry, group, or organization is

---

[101] Rec. Doc. 77-2 at 3.

[102] *Id.*

[103] Rec. Doc. 65 at 29–30.

[104] *Dunn v. Bd. of Commissioners of Port of New Orleans*, 2025-0201 (La. App. 4 Cir. 12/3/25), 430 So. 3d 438, 442 (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180–81 (5th Cir. 1975)).

admissible as bearing on the standard of care in determining negligence."[105] "Compliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care."[106] Here, the Amended Complaint alleges that LOOP breached its duty of reasonable care by not rejecting crude oil that was contaminated in excess of industry standards. Hence, Plaintiffs have adequately pled that the LOOP had a duty of reasonable care governed by industry standards, and that allowing contaminated crude oil to flow downstream from its facility was a breach of that duty. Therefore, the Court finds that Plaintiffs have met their burden of alleging a plausible negligence claim against LOOP.

### V. Conclusion

For the reasons explained above, the Court finds the Plaintiffs have alleged plausible LPLA, breach of contract, and negligence claims against LOOP. Thus, the Court denies the instant motion for judgment on the pleadings.

Accordingly,

**IT IS HEREBY ORDERED** that LOOP's Motion for Judgment on the Pleadings[107] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  21st  day of July, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[105] *Muncie Aviation Corp*, 519 F.2d at 1180.

[106] *Id.* at 1180–81.

[107] Rec. Doc. 129.